# United States Court of Appeals
# for the Federal Circuit

_____

## LENDINGTREE, LLC,
*Plaintiff–Appellant,*

v.

## ZILLOW, INC.,
*Defendant–Cross-Appellant*

## NEXTAG, INC. ADCHEMY, INC.,
*Defendants*

_____

2014-1435, -1531, 2015-1186

_____

Appeals from the United States District Court for the
Western District of North Carolina in No. 3:10-cv-00439-FDW-DCK,
Chief Judge Frank D. Whitney

_____

## APPELLANT LENDINGTREE, LLC'S
## RESPONSE AND REPLY BRIEF

_____

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

| | |
|---|---|
| Stephen S. Korniczky | 12275 El Camino Real, Suite 200 |
| Martin R. Bader | San Diego, California 92130 |
| Michael Murphy | Telephone:  (858) 720-8900 |
| | |
| Edward V. Anderson | 379 Lytton Avenue |
| | Palo Alto, California 94301 |
| | Telephone: (650) 815-2600 |

*Attorneys for Plaintiff–Appellant,*
*LENDINGTREE, LLC*

## <u>CERTIFICATE OF INTEREST</u>

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4, Plaintiff – Appellant LendingTree, LLC certifies the following:

1.      The full name of every party or amicus represented by us is LendingTree, LLC.

2.      The name of the real party in interest represented by us is LendingTree, LLC.

3.      The parent corporation and publicly held corporation that owns 10% or more of the stock of the party represented by us is LendingTree, Inc.

4.      The names of all law firms and partners or associates that have appeared for the party represented by us in the lower tribunal, or are expected to appear for the party represented by us in this Court, are:

Sheppard Mullin Richter & Hampton LLP:  Stephen Korniczky, Edward Anderson, Martin Bader, David Randall, Laura Burson, Bruce Colbath, Darren Franklin, James Chadwick, James Geriak, Paul Garrity, Jonathan Marina, Lai Yip, Matthew Mueller, Michael Murphy, William Blonigan

Nexsen Pruet, PLLC:  Corby Anderson, Matthew DeAntonio

Orrick, Herrington & Sutcliffe LLP:  Nagendra Setty, George Kanabe

Covington & Burling LLP:  Thomas Garten, Edward Daniel Robinson, Robert Fram, Winslow Taub

-1-

McGuirewoods LLP:  Steven Baker

DATED:  January 21, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Stephen S. Korniczky*
Stephen S. Korniczky

Attorneys for
Plaintiff – Appellant LendingTree, LLC

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF THE ISSUES.........................................................2

RESPONSE TO ZILLOW'S INTRODUCTION ......................................3

STATEMENT OF THE FACTS ..........................................................6

    A.    The Asserted Patents .............................................6

    B.    Zillow's Accused Service And LendingTree's Infringement Case ....................................................8

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ..............................................................................16

I.    THE DISTRICT COURT ERRED IN CONSTRUING THE TERMS "CREDIT DATA," "POSITIVE CREDIT DECISIONS," "OFFERS" AND THE "WHEREBY" CLAUSES..........................................16

    A.    The District Court's Construction Of "Credit Data" Should Be Vacated ........................................16

        1.    The Specification Does Not Require "Credit Data" Be Sufficient To Extend A Loan Offer .........................16

        2.    "Credit Data" Does Not Necessarily Include A Social Security Number ....................................20

        3.    The District Court's Construction Is Contrary To The Prosecution History.................................23

        4.    LendingTree's Proposed Construction Is Proper.....................24

    B.    The District Court Erroneously Construed "Offer" and "Positive Credit Decision" ..................................27

C.     The District Court Improperly Imported "Offers" Into The "Whereby" Clause .................................................................32

D.     The District Court's Erroneous Constructions And Its Importation Of "Offer" Into The "Whereby" Clause Was Highly Prejudicial To LendingTree ......................................34

II.    THE DISTRICT COURT COMMITTED EVIDENTIARY ERRORS THAT SERIOUSLY PREJUDICED LENDINGTREE................................36

A.     LendingTree Was Improperly Denied Its Right to Examine Zillow's Key Expert Using the Patent Specification ..........................36

B.     The District Court's Prohibition On Crossing Dennis With The Specification Was Highly Prejudicial To LendingTree .....................39

C.     LendingTree Did Not Waive Its Objections To Zillow's Use Of Testimony from Unrelated Litigations .................................................41

III.   THE FINDING OF IMPROPER INVENTORSHIP SHOULD BE VACATED ...................................................................................43

A.     The PTO's Correction Moots The Inventorship Issue ......................43

B.     Inventorship Was Correctable – As Shown By The PTO's Correction ............................................................................44

C.     The General Verdict Supports A Separate Proceeding To Consider Inventorship .........................................................45

D.     The Jury Could Not Have Considered Claim Language That Was Not Before It.................................................................46

ZILLOW'S CROSS-APPEAL.............................................................47

IV.   THE CLAIMS ARE NOT UNPATENTABLY ABSTRACT .....................47

A.     Step One: The Claims Are Not "Directed To" an Abstract Idea ........48

      1.     Supreme Court Precedent Confirms That The Claims Are Not "Directed To" an Abstract Idea .........................................51

      2.     LendingTree's Patented Invention Cannot Be Performed Manually ..................................................................54

B.    Step Two: The Claims Recite a Patent-Eligible Application..............56

    1.    The Inventive Concepts Recited in the Claims Represent a Specific Application...............................................................56

    3.    The Claims Do Not Preempt the Idea Comparing Credit Information to Lending Criteria Or Of A Clearinghouse .........59

    4.    LendingTree's Patents Do Not Rise And Fall With *Ultramercial* .............................................................................61

CONCLUSION ......................................................................................63

# TABLE OF AUTHORITIES

Page(s)

<u>Federal Cases</u>

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*
448 F.3d 1324 (Fed. Cir. 2006) ...........................................................19

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH*
224 F.3d 1308 (Fed. Cir. 2000) ...........................................................19

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*
412 F.3d 1331 (Fed. Cir. 2005) ...........................................................45

*Ethicon, Inc. v. U.S. Surgical Corp.*
921 F. Supp. 901 (D. Conn. 1995)........................................................45

*Fenner Investments, Ltd. v. Cellco Partnership*
No. 2013-1640 (Fed. Cir. Feb. 12, 2015) ...............................30, 31, 32

*Marine Polymer Techs., Inc. v. HemCon, Inc.*
672 F.3d 1350 (Fed. Cir. 2012) ...........................................................38

*Marketel Int'l, Inc. v. Priceline.com*
138 F. Supp. 2d 1210 (N.D. Cal. 2001)................................................45

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed.Cir. 2005)(en banc) .............................................17

*SRI Int'l v. Matsushita Elec. Corp. of Am.*
775 F.2d 1107 (Fed. Cir. 1985) .....................................................34, 38

*Superguide Corp. v. DirecTV Enterprises, Inc.*
358 F.3d 870 (Fed. Cir. 2004) .............................................................34

*Tessera, Inc. v. ITC*
646 F.3d 1357 (Fed. Cir. 2011) ...........................................................38

*United States v. Telectronics, Inc.*
857 F.2d 778 (Fed. Cir.1998) ..............................................................24

*Verizon Servs. Corp. v. Vonage Holdings Corp.*
503 F.3d 1295 (Fed. Cir. 2007) .....................................................22, 25

Federal: Statutes, Rules, Regulations, Constitutional Provisions

35 U.S.C. §256 ........................................................................................................45

35 U.S.C. §256 ........................................................................................................45

## <u>STATEMENT OF RELATED CASES</u>

This case was not previously before the Court of Appeals for the Federal Circuit or any other appellate court under the same or similar title. Appellant LendingTree, LLC ("LendingTree") is not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

# STATEMENT OF THE ISSUES

*LendingTree's Appeal*

1.    Whether the district court erred in its claim construction of the terms "credit data," "offers," "positive credit decisions" and the "whereby" clauses.

2.    Whether the district court erred in refusing to grant LendingTree's motion for a new trial after:

a.    prohibiting LendingTree from cross-examining Zillow's key non-infringement expert using the patent specifications; and/or

b.    failing to exclude irrelevant testimony from prior unrelated patent litigation regarding the scope of unrelated third-party patent claims.

3.    Whether the district court erred in refusing to correct inventorship of LendingTree's asserted patents.

*Zillow's Cross-Appeal*

4.    Whether the district court properly determined LendingTree's patents were eligible for patenting hearing considering substantial evidence, in briefing and at trial, regarding the scope of LendingTree's patent claims and the inventive concepts described and claimed in LendingTree's asserted claims.

## **RESPONSE TO ZILLOW'S INTRODUCTION**

Zillow's "introduction" misleads and obfuscates the patent claims and the district court's rulings, setting up straw arguments at odds with both the patents and the evidence presented at trial. LendingTree's two patents include multiple claims, with differing scopes, and teach several embodiments. LendingTree's patented process revolutionized the lending industry, won multiple awards from the industry, and launched a multimillion dollar business. A10377, A12022, A12042, A12043-44. In an attempt to deny these facts, Zillow mischaracterizes the scope of the patent claims and the rulings of the District Court.

Zillow's primary argument is that ***all claims*** from both patents are limited to a single embodiment that purportedly requires collection of a borrower's Social Security number at the outset and must result at the end in a completed loan transaction. This argument ignores that different claims are presumed to have different scope, that the asserted claims do not require either a Social Security number or a completed loan transaction, and that the specification discloses multiple embodiments. A533, *see also* Argument Section I.A. *infra*. One embodiment of the invention describes a ten-stage process, but the asserted claims require only some of the stages. *See, e.g.*, A533-34 (Claims 1 and 18–requiring transmission of data to lenders; Claims 2 and 20–further requiring transmission of a positive credit decision from lenders to a potential borrower (referred to as the

"user" in the patents); Claim 19–also requiring transmission of a user's decision regarding a positive credit decision); A10882-884. The patented inventions are defined by these claims–not by the patent title, or a lone figure describing several unclaimed steps.

Furthermore, the claims do not require forwarding a completed loan application to lenders. Rather, the claims teach processing relevant data (*i.e.*, "credit data") from an electronic qualification form. This processed "credit data"– not the entire qualification form–is transmitted to multiple lenders. *See, e.g.*, A533-534 (Claims 1, 18 and 22). Upon receiving the "credit data," lenders may provide the potential borrower (referred to as the "user") with quotes for potential loans, "request [ ] more information" from the user, or take no action. *See* A532 at 6:12. In some claims, a user may then accept a response from the lenders, choose not to respond, or simply request more information from lenders. *See, e.g.*, A514 (Claim 1). If the lender has made an offer that a user accepts, then as described in the specification (but not claimed in many asserted claims) the loan (or another form of credit offering) may proceed to closing with the exchange of additional information and verification of the information provided. *See* A532-533. Nowhere do the claims, the specification, or the district court's constructions require that lenders receive a user's Social Security number or other sensitive personal information before responding with quotes for potential credit offerings.

As described in Zillow's public documents, Zillow's accused service operates precisely as claimed in LendingTree's patents. That is, the accused service requests information from potential borrowers, provides at least some of that information to lenders, receives from the lenders rate quotes for potential loans, and simultaneously provides up to four quotes to the potential borrowers. A10600. Following this, the potential borrowers may continue the process to close a loan at the rate quoted by the lender(s). *Id.*

LendingTree's patents describe an e-commerce system that improved the functioning of credit markets. This system is a limited and focused application that requires multiple computers working in tandem in a specific manner to provide users with simultaneous real-time accurate quotes for credit from multiple lenders– a timing contribution new in the art. A530, A10270, A10759, A10779, A10784, A10789-90. Thus, the patents do not describe an abstract idea, but rather a limited application of an e-commerce system with a timing step new in the art – this is akin to the claims at issue in *Diamond v. Diehr*, where the claims disclosed the "inventive application" of a new timing step of continuous temperature monitoring. 450 U.S. 175, 179 n5 (1981); *see also BuySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1356 n1 (Fed.Cir.2014)(explaining *Diehr*).

## STATEMENT OF THE FACTS

Zillow's statement of facts contains several misrepresentations regarding LendingTree's patents and the district court proceedings.

### A.    The Asserted Patents

Zillow misconstrues the claims and limitations of LendingTree's patents.  At trial, LendingTree asserted Claims 1 and 6 from U.S. Patent No. 6,385,594 ("the '594 Patent") and Claims 1, 4-5, 18-20 and 22-24 from U.S. Patent No. 6,611,816 ("the '816 Patent") (collectively "the Asserted Claims").

Zillow contends that in all Asserted Claims "an application that meets a lender's criteria is transmitted to that lender."  RedBr. 8, 10.  This is incorrect. Claim 1 of the '594 Patent transmits the user's qualification form to lenders, but Claims 1, 18 and 22 from the '816 Patent transmit only selected "credit data" from the qualification form.  A533-534.  The specification teaches that relevant credit data from the application is stored on table **150** in the processor's computer, and only the relevant credit data from table **150** is sent to the lender – not the application completed by the user.  A532, 5:53-56.  Thus, if a Social Security number or Fair Isaac Credict Score is not relevant to the lenders, it is not transmitted as "credit data."  A533-534; A10882-884.  Zillow paints with a broad-brush and ignores the distinctions between the Asserted Claims and the detailed process set forth in the specification.

Zillow also contends "[e]ach lender can respond to the pre-screened application by making an offer of credit[.]"  RedBr. 8, 10.  However, in Claims 1, 18 and 22 from the '816 Patent lenders receive only "credit data"–not the entire qualification form.[1]  Moreover, the specification teaches that lenders can not only approve or deny the user's request for credit, but also may "request more information from the borrower."  A532, 6:11-12.  Similarly, the user may choose among the offers, decline to move forward, or may request additional information from the lenders.  A532, 6:49-51; A514, 7:47-51 ('594 Patent Claim 1).  Thus, a lender is not required to respond to an application by making a binding offer to the user, nor do the Asserted Claims require that any lender issue a loan.

Zillow incorrectly contends that Figure 1 describes the ten stages of the claimed method.  RedBr. 30, 34-35.  However, the specification states "several embodiments of the present invention have been shown and described[.]"  A533, 7:19-20.  Moreover, the claims are not limited to the ten stages described in Figure 1, which contains steps not recited in the Asserted Claims.  For example, Claims 1 and 18 from the '816 Patent do not claim specific actions by the lenders or user following transmission of credit data in stage 8.  A533; A10882-884.  Claims 2 and 20 require transmission of a lender's positive credit decision to a user (stage 8), but do not require a decision by the user (stage 9).  A533-534.  Claim 19 requires

---

[1] Thus, Zillow fails to address the Asserted Claims from the '816 Patent.

transmission of a user's decision (stage 9), but does not require closing of a loan (stage 10). A534.

Zillow repeatedly argues the claims purportedly "require that a lender make an actual loan offer based on the credit data received." RedBr. 12. This is untrue. Lenders may extend credit, deny credit, or "request more information from the borrower." A532, 6:11-12. Moreover, where Asserted Claims require that lenders compete with each other for the user's business, that competition may be through showing potential rates and/or reviews – not only through offers to users. A533 (*Compare* Claim 1 (requiring lenders "compete"), *with* Claim 7 (requiring lenders "compete … by making offers")); A10608. Reading the claims properly, in light of the specification and preferred embodiments, shows the patented invention is not limited in the severe manner advocated by Zillow.

## B. Zillow's Accused Service And LendingTree's Infringement Case

Zillow erroneously contends that its system does not infringe LendingTree's patents for three alleged reasons: (1) it does not collect sufficient information to make a decision to extend or deny credit; (2) it does not transmit credit data to lenders; and (3) it does not allow lenders to make offers that can be accepted to create mutual assent or a binding promise. RedBr. 19. However, Zillow's own public statements describing its system shows the contrary.

Zillow's accused system may not collect a customer's name or social security number in the initial qualification form, but that is not sufficient to avoid infringement. Zillow's system provides sufficient information for lenders to make quotes for potential loans to the customer.

> When borrowers come to Zillow Mortgage Marketplace they fill out an anonymous loan request form… When the borrower is ready they click 'Get Quotes' [on the web page] which posts out the loan request to a market place of lenders. The lenders then return back with quotes for the borrower that are personalized to the information that they received.

A10600 (Transcript of Zillow's video regarding Zillow Mortgage Marketplace).[2] Thus, Zillow's public statements contradict its representations that the accused system does not provide lenders with sufficient information to make offers to extend credit and that lenders do not return quotes to potential borrowers.

Furthemore, customers can rely on quotes they receive via Zillow Mortgage Marketplace. Zillow requires its lenders "to stand by their quotes" and admitted that borrowers could expect the offers received from its lead-generation service to be a binding commitment. A10601 ("[I]f nothing changes and all the information that they later provide doesn't change what they had originally said at the initial point of rate quote [ ] then the borrower would expect to end up with the same thing way down the road.").

---

[2] The noninfringement testimony from Zillow's paid expert Marshall Dennis is unreliable because it ignores Zillow's public statements regarding the Accused System. *See* A10765, 2323:8-22.

Zillow attempts to describe its business as far removed from handling loan requests and merely an advertising tool that consumers can use to browse rates and receive leads to potential lenders.  RedBr. 17-18.  But Zillow's SEC filings describe Zillow Mortgage Marketplace as a multimillion dollar business handling millions of *loan requests*.  A10599, 1683:4-8.  "For 2013, there were more than 20 million loan requests submitted through Zillow Mortgage Marketplace[.]" A10599, 1683:25-1684:2.  Thus, Zillow's alleged evidence of non-infringement (under the district court's erroneous constructions) is undermined by its own public documents and descriptions of its accused system.[3]

Zillow argues that LendingTree contested the district court's claim constructions at trial.  RedBr. 21.  This is false.  The district court's construction does not limit "credit data" to a Social Security number or the information required in a Form 1003.  A10775, A11099.  Thus, there was nothing improper with LendingTree presenting testimony that many types of information could qualify as "credit data" under the district court's construction.  Even Zillow's public description of its accused system states that users could expect to receive quotes without submitting a name or Social Security number.  A10600.

Consistent with Zillow's testimony, LendingTree presented evidence showing lenders could make offers that consumers would expect them to stand

---

[3] These descriptions are not colored by the ongoing litigation.

behind before receiving a Social Security number.  A10601.  This is not contrary to the Court's construction of "offer" to mean "a proposal to extend credit that can be accepted by the user to create mutual assent [*i.e.*, binding promise]."  As discussed in LendingTree's opening brief and in this brief, nothing in the specification limits lenders to only making offers after receiving a Form 1003 or a user's Social Security number.  *See* BlueBr. 22-26, Argument Section I.A. *infra*.

Zillow argues that the district court reprimanded LendingTree for attempting to circumvent the court's claim construction.  RedBr. 22.  Of the occasions cited by Zillow, only once did the district court arguably "reprimand" LendingTree.  A10770, 2343:9-19.  This "reprimand" followed an improper objection where Zillow argued LendingTree could not question Zillow's noninfringement expert using the specification of the patents.  A10768.  As discussed in LendingTree's opening brief and this brief, the testimony from Zillow's expert was inconsistent with the patent specification.  *See* BlueBr. 38-41; Argument Section II.A. *infra*. LendingTree was entitled to cross-examine Zillow's expert with the specification to show the expert does not understand the patent and that his infringement/non-infringement theory ignores the preferred embodiments–this is not claim construction.  *See Tessera, Inc. v.* ITC, 646 F.3d 1357, 1365-66 (Fed.Cir.2011). Thus, LendingTree's litigation positions and the evidence properly showed

Zillow's infringement under both district court's constructions, as well as constructions proposed by LendingTree.

## SUMMARY OF THE ARGUMENT

To support the district court's constructions, Zillow plays fast-and-loose with the language of the patents, inserting language from a single embodiment into claims that do not require several steps described in that embodiment. The district court erroneously imported limitations into the Asserted Claims that exclude preferred embodiments, are unsupported by the specification, and ignore the claim language. Therefore those constructions should be vacated, the disputed terms should be construed as requested by LendingTree, and the case should be remanded for trial on the issue of infringement.

The district court also improperly barred LendingTree from cross-examining Zillow's key non-infringement expert, Marshall Dennis, with the patent specification. Dennis testified the Asserted Claims required the early collection and transmission of a Social Security number and the information required by a Form 1003; this was the heart of Zillow's noninfringement argument. The patents claim a computerized system for coordinating communications between borrowers and lenders to result in simultaneous competition. Dennis admitted that he did not understand anything about computer technology and LendingTree was entitled to show that his testimony regarding the transmission of Social Security numbers was

-12-

inconsistent with the preferred embodiments in the specification. The district court shut-down this cross-examination based on Zillow's erroneous argument that such testimony would be contrary to the district court's claim construction. However, the district court's claim construction does not require the transmission of a social security number and LendingTree was entitled to examine Dennis'ss understanding of the patents.

The district court improperly permitted Zillow to ask improper misleading questions using testimony from unrelated litigation, regarding different claim constructions for unrelated patents. Zillow's questions were not designed to show prior inconsistent statements of fact. Zillow read from prior appellate briefs regarding claim construction arguments on unrelated patents, and mischaracterized the district court's constructions and the constructions from the prior litigations. LendingTree repeatedly objected to this line of questioning and requested a continuing objection. This line of questioning was confusing to the jury and highly prejudicial to LendingTree.

The district court abused its discretion in electing not to hold a hearing to correct inventorship of LendingTree's patents and ordering LendingTree to seek correction from the PTO. However, that issue is now moot. Pursuant to the district court's instructions LendingTree sought correction from the PTO, and the

PTO corrected the patents. Accordingly, this Court should vacate the verdict of invalidity for incorrect inventorship.

The district court properly found the Asserted Claims are patent-eligible. The district court carefully considered whether LendingTree's claims were eligible. It denied Zillow's first motion seeking ineligibility as premature. The district court then considered extensive summary judgment briefing and postponed a decision until after trial so it could also weigh percipient and expert testimony. After considering all this evidence, the district court found the Asserted Claims patent-eligible. LendingTree is unaware of any case where a district court considered this much evidence when ruling on patent eligibility.

The district court's denial of Zillow's motion seeking ineligibility was proper. The claims here satisfy the two-step test for patent-eligibility under §101 set forth by the Supreme Court in *Alice* and *Mayo*. At step one, the claims are not "directed to" an abstract idea. The Asserted Claims are not directed to a mere idea, having no particular concrete or tangible form, nor are they directed to a mathematical formula for calculating a number or a fundamental economic practice. They address an improvement to a specific technological process and cover only a detailed system for coordinating multiple computers to handle credit-related communications between lenders and potential borrowers to result in simultaneous competition. Thus, the §101 analysis here should end at step one.

But even if the Court were to assume the claims are directed to an abstract idea, they must be upheld if the claimed implementation "add[s] enough ... to allow the processes they describe to qualify as patent-eligible processes that apply" the putative abstract idea rather than seeking to monopolize the idea itself. *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1297 (2012). As the Supreme Court and this Court have recognized, a "claimed contribution to the art" such as a new timing step is sufficient to render patent claims eligible for patenting. *See BuySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1356 n1 (Fed.Cir.2014). In *Diamond v. Diehr*, the Supreme Court held a patent that only contributed the new timing step of "constantly measuring the actual temperature" in a mold was patent-eligible. 450 U.S. 178, 179 n.5 (1981). LendingTree's Asserted Claims contribute to the art the timing step of "simultaneous" competition. At a minimum, because the Asserted Claims provide a new timing-based contribution to the art, the Court should find LendingTree's Asserted Claims are just as patent-eligible as the claims in *Diehr*.

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN CONSTRUING THE TERMS "CREDIT DATA," "POSITIVE CREDIT DECISIONS," "OFFERS" AND THE "WHEREBY" CLAUSES**

A. **The District Court's Construction Of "Credit Data" Should Be Vacated**

1. **The Specification Does Not Require "Credit Data" Be Sufficient To Extend A Loan Offer**

The district court erroneously construed "credit data" to mean "information entered on the qualification form sufficient for a lending institution to extend or deny credit." A2, 11152. This construction is contrary to the specification, excludes a preferred embodiment, and imports language that was removed during prosecution. The district court should have construed "credit data" to mean "data reflecting the potential creditworthiness of the user."

Zillow attempts to defend the district court's erroneous construction, but repeatedly mis-cites and mischaracterizes the construction and the specification's description of "credit data." Zillow contends the district court construed credit data as "sufficient information for a lender to decide whether to extend credit." RedBr. 29. However, the district court's actual construction was "information entered on the qualification form sufficient for a lending institution to extend **_or deny_** credit." A2, 11152 (emphasis added). Zillow's inability to properly recite the district court's claim construction on appeal, highlights how Zillow misused the district court's construction during trial. At trial, Zillow repeatedly attempted

-16-

to limit the district court's construction to information sufficient to extend credit. Furthemore, Zillow's improper characterization of the claim construction was designed to confuse the jury with testimony and court rulings from prior litigation involving unrelated patents.  *See* BlueBr. 42-48; Argument Section II.C. *infra*.

Zillow also repeatedly mis-cites the specification's description of "credit data" and the scope of the claims as shown in dependent claims and the specification.  As claimed, "credit data" is a subset of information collected on the qualification form.  *See*, *e.g.*, A514 ('594 Patent Claim 1 ("qualification form comprising said credit data")).  Zillow contends that this information must be sufficient for lenders to extend credit.  RedBr. 29.  Zillow is incorrect.  The only requirement for "credit data" imposed by the claim language and the specification is that the data can be filtered and matched against criteria from lenders.  A516, A533-34.  Based upon this filtering and matching, the lenders may choose to extend an offer of credit, may request additional information from the user, or may elect to compete with each other by other means (*e.g*., showing rates and reviews).  *See, e.g.,* A533 7:6-11.  However, these limitations reside in other claim language and should not be read into "credit data."  *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed.Cir.2005)(en banc) (all claim terms must be given meaning and none can be considered superfluous or redundant).

Zillow argues "credit data" is interchangeable with the credit application described in the specification, which it then contends is synonymous with the claimed "qualification form." RedBr. 29. This is incorrect and ignores the language of Claim 1 of the '594 Patent. A514 ("qualification form comprising said credit data"). Zillow also ignores the detailed discussion of the preferred embodiment which states "as shown in FIGS. **9***a*, **9***b* and **10**, computer **100** sends data from table **150** via the interface method selected in stage 7 to the lending institutions selected in the filter process of stage 6." A532 5:53-56. The data in table **150** is *not* the user's application, rather it is a subset of user information that is filtered and matched to criteria from the lender. *See* A531 4:35-37 ("the data from completed application **115** is sorted and stored on table **150** in database **140** based on the type of loan requested[.]"); *see also* A523, Fig. 4. Thus, the credit data "transmitt[ed] to each of the selected lending institutions" in Claims 1, 18 and 22 from the '816 Patent is **not** the entire qualification form, but only a selected subset of collected information that meets a lender's selection criteria related to the type of loan requested.

Zillow seizes on generalized language stating that "in stage 7 the application is sent to each one of those institutions whose criteria matched with the application. In stage 8 the lender processes the application and can accept or deny it." RedBr. 29 citing A531. However, the specification states "several

-18-

embodiments of the present invention have been shown and described[.]" A533, 7:19-20.  The embodiment relied upon by Zillow is claimed in unasserted Claim 7 of the '816 Patent.  *See* A533, 7:61-8:6.  In contrast, Claims 1, 18 and 22 of the '816 Patent teach that "credit data" is extracted from the qualification form and transmitted to the lenders.  A533-534.  The use of different claims terms connotes different meanings, with different scope and different embodiments.  *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed.Cir.2006); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed.Cir.2000).  Thus, while the embodiment of unasserted Claim 7 may transmit the application, the embodiments of asserted claims 1, 18 and 22 only transmit credit data.  Any reliance on the language cited by Zillow to construe "credit data" as equivalent to "qualification [or application] form" erroneously ignores the preferred embodiment where data is drawn from an application form, filtered and placed in Table **150**, the final result of which is "credit data" that is transmitted to the lending institutions.  *See* A531, 4:35-37; A523, Fig. 4; A532, 5:53-56.

The specification does ***not*** require that information provided to the lender be sufficient for a lender to extend credit.  The patent explicitly contemplates that user information may not be sufficient to forward to potential lenders.  *See* A53, 5:26-30.  The specification further contemplates that lenders may find the information provided in the application or from table **150** insufficient and may elect not to

respond with an offer to extend credit.  *See* A532, 6:2-7 ("In step **71** the lender

approves or denies application **115** … if the lending institution denies application

**115**, then in step **72** it attaches a denial to the record file.").  After the "credit data"

is sent to the selected lenders, the lenders can also "request more information from

the borrower."  A532, 6:10-12, Fig. 10; *see also* A508, 513.   The "credit data"

sent to the lending institutions does not need to be sufficient to finalize a loan

offer.  Nowhere in the patent is there a requirement that the data collected from the

computer user be limited to information sufficient for the lending institution to

extend credit (the construction urged by Zillow before the district court), or to

extend or deny credit (the construction from the district court).  On the contrary,

the information submitted by the user may not even be sufficient to make it

through the filtering and processing steps of the claimed method.

### 2.   "Credit Data" Does Not Necessarily Include A Social Security Number

Zillow argues that because one preferred embodiment collects the user's

Social Security number, the term "credit data" must include a social security

number.  *See* RedBr. 34-35.  However, the specification describes more than one

embodiment.  *See* A533, 7:19-20.  Thus, collection of the user's Social Security

number in one embodiment does not result in all embodiments collecting (or

transmitting) the user's Social Security number to lenders.

Furthermore, Zillow misreads the specification. While the specification describes one preferred embodiment as formatting the user's Social Security number and obtaining a Fair Isaac Credit Score, these occur in stages 3 and 5 of that preferred embodiment – where information collected from the user is validated by the system. *See* A531, 4:19-21. This information is **<u>not</u>** necessarily sent to lenders. The information received from the user must be compared against specific selection criteria received from each lender before it is sent to lenders. This occurs in "stage 6 of the process, wherein computer **100** runs a filter to match completed application **115** in table **150** against preset criteria established by each lender." A531, 4:52-55. Only in stage 8 is relevant information, corresponding to the criteria established by the lenders, sent to lenders. A532, 5:52-56. Under the claim language, "credit data" is this processed information sent to the lender. *See, e.g.*, A533-534 Claim 1 ("transmitting the credit data to each of the selected lending institutions"); Claim 18 ("transmitting the credit data to the selected ones of the financial institutions"). Moreover, as acknowledged in the record, Social Security numbers are sensitive information, and lenders may wish to avoid collecting that information until they are satisfied that a potential borrower meets other credit criteria. A10761.

Zillow suggests "credit data" is equivalent to all information captured on the application. However, as described in other preferred embodiments, the

information sent to lenders is **not** the application form, but rather information that has been processed, filtered and entered into table **150** in the third-party processor's data base.  A523, 5:53-56 ("computer **100** sends data from table **150** … to the lending institutions selected in the filter process of stage **6**.").  In this preferred embodiment, the third-party processor's computer **100** sends processed and filtered information from table **150**, there is no requirement that this information include the computer user's social security number or any other specific information –the information need only be "data reflecting the potential creditworthiness of the user."  If "credit data" were construed as identical to all the information on the application form, it would exclude this embodiment.  This Court has cautioned against interpreting a claim term in a way that excludes disclosed embodiments, when the term has multiple ordinary meanings consistent with the intrinsic record.  *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed.Cir.2007).  There is no disclaimer in the specification limiting "credit data" to information that must include a user's Social Security number[4], nor did the district court construe "credit data" as requiring the user's Social Security number.  A10775, A11099.

---

[4] The standards for finding disavowal are "exacting."  *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed.Cir.2014); *see also SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed.Cir.2001).  Here, Zillow has essentially argued disavowal of broad claim scope without even attempting to meet the necessary criteria or citing the relevant case law.

### 3.  The District Court's Construction Is Contrary To The Prosecution History

Zillow contends that the prosecution history supports the district court's construction.  RedBr. 31-32, 36-37.  Zillow's arguments are unsupported by the law or the record.

First, Zillow erroneously argues that LendingTree's patents should be limited to extending credit because prior art considered by the PTO allegedly resulted in the closing of a loan.  RedBr. 31-32.  Zillow fails to cite any authority to support this nonsensical argument.  The PTO issued the Asserted Claims over prior art it considered during prosecution and LendingTree's patents are presumed to be different from that art.  Thus, there is no logical basis to tie LendingTree's claims to the disclosures of two prior art patents.[5]  *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1279 (Fed.Cir.2003) ("[M]ere disclosure of potentially material prior art to the [PTO] does not automatically limit the claimed invention.").

Zillow also misreads the prosecution history.  Zillow argues the prosecution history does not show the removal of a "decision whether to extend an offer of credit" from the '594 Patent.  RedBr. 36-37.  The prosecution history speaks for

---

[5] Zillow does not point to any statement by LendingTree distinguishing this prior art that might limit the scope of the Asserted Claims.  Without a clear disclaimer in the prosecution history, there is no legal basis to read "credit data" as limited to information sufficient to extend or deny credit.

itself.  As originally filed, Claim 1 of the '594 Patent expressly claimed "receiving a notification … regarding a decision whether to extend an offer of credit or a loan[.]"  A2239.  This was amended to remove "a decision whether to extend[.]"  *Id.*  Zillow claims pages A1495-96 from the prosecution history explain this amendment as not altering the scope of the claim.  *See* RedBr. 36 n.14.  However, these pages do not even discuss the removal of "a decision whether to extend" an offer of credit.

The requirement to make "a decision whether to extend" credit was removed during prosecution.  "[C]ourts are not permitted to read back into the claims limitations that were originally removed and were removed during prosecution."  *United States v. Telectronics, Inc.*, 857 F.2d 778, 783 (Fed.Cir.1998).  Zillow points to no language in the prosecution history that supports reading back into the claims a limitation requiring "credit data" to include sufficient information to make "a decision whether to extend" credit.  Because there has not been a clear disclaimer of claim scope, this Court should reject Zillow's argument and vacate the district court's construction of "credit data."

### 4.  LendingTree's Proposed Construction Is Proper

LendingTree moved the district court to construe "credit data" to mean "data reflecting the potential creditworthiness of the user."  A1235-38.  This construction does not exclude any preferred embodiments.  The preferred embodiments collect

preliminary credit-related information from the borrower, filter and process that

information, and provide some of the filtered information to lenders.  This filtered,

processed and transmitted information is the claimed "credit data."  Based upon the

"credit data" transmitted to the lenders, lenders may provide the user with a quote

for a loan rate.[6]  Upon the user's acceptance of a quote, the lender then collects

***additional information*** necessary to close the loan.  A532-33; RedBr. 33.

Limiting "credit data" to a specific type of credit information such as a Social

Security number, or the information collected on the electronic qualification form,

or information sufficient to extend or deny an offer of credit improperly reads out

embodiments from the specification.  This Court has cautioned against interpreting

a claim term in a way that excludes disclosed embodiments, when that term has

multiple ordinary meanings consistent with the intrinsic record.  *See, e.g.*, *Verizon*

*Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007)

(noting the disputed claim term has multiple ordinary meanings and adopting the

ordinary meaning that includes the disclosed examples in the specification).

Zillow argues that LendingTree's proposed construction renders the

invention inoperable and/or indefinite.  RedBr. 37.  These arguments are untrue.

The specification states, the invention "receiv[es] a plurality of credit data from the

Internet User[.]"  A530, 2:4-5.  The invention applies to many types of lenders–

---

[6] Providing a quote is ***not*** required by the patents.  A532, 5:15-17, 5:26-28.

mortgage, car loan, student loan, personal loan, credit card, etc. *See* A533, 2:9-14. One of skill in the art would be familiar with the lending industry and would understand that such different lenders would find different types of data relevant to determining whether to move forward with a potential loan – *e.g.*, credit report (not relevant to lenders providing credit to first time borrowers), appraisals of property (not relevant to student loan, personal loan or credit card lenders), W2s (unlikely to be relevant to student loans). Thus, one of skill in the art would reasonably understand the types of information that lending institutions may consider when deciding whether to compete for business with the user. Furthermore, the specification teaches specific items of credit data would be provided by individual lending institutions. *See* A530, 2:18-19 ("The filter is made up of a plurality of selection criteria in which a specific lending institution has given to the inventor.") Thus, Zillow cannot establish by clear and convincing evidence – particularly on appeal – that one of skill in the art would not understand the type of information that constitutes "credit data" under LendingTree's proposed construction.

LendingTree proposed the district court construe "credit data" to mean "data reflecting the potential creditworthiness of the user." A1235-38. This does not omit any preferred embodiments and is consistent with the term's ordinary meaning and how the term is used in the specification. Accordingly, this Court

should reverse the district court's construction and construe "credit data" to mean "data reflecting the potential creditworthiness of the user."

## B. The District Court Erroneously Construed "Offer" and "Positive Credit Decision"

Zillow makes little effort to defend the district court's erroneous construction of "offer" and "positive credit decision." The district court construed both terms to mean "a proposal to extend credit that can be accepted by the user to create mutual assent." A2, A11152. The district court further construed "mutual assent" within its construction of "offer" to mean "i.e., contract." Then, in the middle of trial, the district court changed its construction of "mutual assent" from "i.e., contract" to a "binding promise." A10728, A11152. However, "proposal to extend credit," "mutual assent," "contract" and "binding promise" appear nowhere in the intrinsic record and should not be imported into LendingTree's Asserted Claims via claim construction. Instead, this Court should construe "offer" to mean "loan terms for which the user may qualify" and should construe "positive credit decision" according to its plain and ordinary meaning.

Zillow does not attempt to argue that "proposal to extend credit," "mutual assent," "contract" or "binding promise" are found anywhere in the specification of the patents or in the prosecution history. *See* RedBr. 39-42. Instead, Zillow makes several inaccurate and unsupported statements to justify the district court's erroneous construction. Zillow states many of the asserted claims "require a

'decision … to offer a loan.'" RedBr. 39. Zillow provides no citation for this statement because *none* of the claims in either patent use the quoted language "to offer a loan," and Claim 19 of the '816 Patent only uses "decision" in the context of "a decision from the Internet User"–not the lender. A533-34.

Zillow also argues that "offer" must be construed to include a "binding promise," because otherwise users would have to submit multiple applications to get loan terms. RedBr. 39-40. Zillow cites nothing to support its allegation. On the contrary, Zillow argued in the district court that its accused service does not provide a binding promise, but testified that users receive multiple quotes from a single application. A1600, A13206, A13202. Thus, Zillow's argument is unsupported and contrary to its own trial testimony.

Zillow states, "[t]he specification is explicit that lenders must make offers and positive credit decisions, that when accepted, result in a loan closing" is not supported by the record and Zillow provides no citation to support its statement. RedBr. 40. As Zillow acknowledges on the following page of its brief, the specification states "the *lender* can request additional information to coordinate the closing of the loan [ ], and verify the information in the credit [data]."[7] RedBr. 41

---

[7] Zillow incorrectly states that the lender verifies the information in the "credit application", however, only a few claims (*e.g.*, '816 patent Claim 7) require transmitting the qualification form to the lender. A533. Other claims (*e.g.*, '816 patent Claims 1, 18 and 22) require transmitting relevant "credit data" taken from the qualification form to the lender. A533-534.

(emphasis in original), citing A533, 7:6-11.  Disregarding this admission, Zillow

attempts to argue that *only the user* can request more information from the lender.

RedBr. 40-41.  In support of this assertion, Zillow cites language from Claim 1 of

the '594 Patent.  RedBr. 41 (citing A514 ("receiving … at least one decision from

the Internet user … comprising an acceptance denial or *request for more*

*information* regarding a positive credit decision") (emphasis in original)).  But this

language does not limit the lender from requesting additional information, it

merely clarifies that more information may be exchanged between the user and the

lender ***before*** credit is provided.  Furthermore, the specification is explicit that the

lender can "request additional information from the borrower" as part of stage 8 –

before the borrower accepts any "offer" in stage 9.  A532, 6:10-12.  Because more

information may be exchanged before closing a loan, the claimed "offer" should be

construed to mean loan terms for which the ***user may qualify***, and not a "contract"

or "binding promise."

Zillow states that "offer" and "positive credit decisions" refer to "the

identical step described in the specification: the lender's acceptance of the credit

application."  RedBr. 41.  Again, Zillow fails to cite any support in the

specification.  Moreover, Zillow's contention that "offer" and "positive credit

decisions" refer to the lender's acceptance of the credit application is incorrect – in

many claims the lender is only provided with relevant credit data found on the qualification form, not the qualification form itself.  *See* A533-534.

Finally, Zillow argues the district court's construction of "positive credit decision" to mean a "binding promise" is entitled to deference because LendingTree's expert testified in a deposition that a credit decision would be understood as a decision relating to whether to grant or deny credit.  RedBr. 42.  Zillow's contention is legally and factually unsupported.  Zillow acknowledges the district court made no findings of fact when issuing its claim construction.  Under this Court's precedent, the district court's constructions are reviewed *de novo*.  *See In re Papst Licensing Digital Camera Patent Litig.,* No. 2014-1110 (Fed.Cir. Feb. 3, 2015)*; Fenner Investments, Ltd. v. Cellco Partnership,* No. 2013-1640 (Fed.Cir.Feb. 12, 2015); *Cardsoft LLC v. Verifone, Inc.*, No. 14-1135 (Fed.Cir. Dec. 2, 2015).  Furthermore, the testimony from LendingTree's expert does not support the district court's construction of positive credit decision as a "binding promise."  LendingTree's expert merely testified that a "credit decision" includes a "decision that a financial institution would make in determining whether or not to offer a loan."  A12897-898.  This is merely the plain and ordinary meaning of "credit decision."  Thus, there is nothing in the specification or the cited testimony that supports either the district court's construction or any deference to that construction.

The specification uses "offer" in the preferred embodiment to refer to the lender providing initial loan terms for which the user may (or may not) qualify. This "offer" is not a binding commitment to close a loan. The specification provides that more information may be exchanged, either by the borrower requesting information, or by the lender requesting information after the "offer" is made, but prior to closing a loan as described in Stage 10 of the preferred embodiment. A513, A532 ("The text message decision file contains a loan id number and a request for more information from the borrower."), ("Once the lender logs into the website he can download information relating to a borrower's request for information.")). The specification further describes the lender receiving an "acceptance email sent when the offer was accepted," but indicates that later "the lender contacts the borrower to coordinate the closing of the loan"— including the collection of additional documents and information from the borrower. A513-514. Furthermore, the lender does not verify credit data until after the "offer" is made. A10874, 2747:5-2749:19. Thus, the "offer," "positive credit decision," and "acceptance" occur before the lender has obtained information and verifications needed to decide whether to formally close a loan (*i.e.* the detailed information collected in a formal loan application). Because the preferred embodiments teach that the "offer" and acceptance occur before the lender has obtained the information and confirmations necessary to formally

extend credit through the closing of the loan, the claimed "offer(s)" refer to loan terms for which a computer user *may* qualify – pending further documentation and confirmation of previously submitted information.

LendingTree moved the district court to construe "offers" to mean "loan terms for which the user may qualify" and to construe "positive credit decisions" according to its plain and ordinary meaning.  A1238-41.  These constructions are consistent with the preferred embodiments (A513-14), and treat each claim term separately as required under the canons of claim construction promulgated by this Court.  In contrast, the district court's constructions of "offer" and "positive credit decisions" were legally erroneous, ignored preferred embodiments from the specification, imported requirements (*i.e.*, "proposal to extend credit," "mutual assent," "contract," "binding process") that are not found in the specification or prosecution history.  This Court should vacate the district court's constructions and construe the terms as requested by LendingTree.

### C.    The District Court Improperly Imported "Offers" Into The "Whereby" Clause

The "whereby" clauses from independent Claim 1 from the '594 Patent, and independent Claims 1 and 22 from the '816 Patent require that "lending institutions compete with each other for business with the computer user."  A514, A533-534.  These claims do not limit how the lenders compete, and as Zillow's director of the accused system testified, lenders may compete by showing ratings, customer

reviews, and providing rate quotes.  A10608.  In contrast, the "whereby clause" of unasserted Claim 7 from the '816 Patent requires the lenders compete "by electing to make offers[.]"[8]  Nevertheless, the district court improperly read "offers" into the "whereby" clauses of Asserted Claims that do not contain the term.

Zillow contends the only way lending institutions compete with each other is by making binding offers for loans to potential borrowers.  *See* RedBr. 42-43.  However, this is contrary to the testimony from Zillow's own witnesses.  Erin Lantz, Zillow's Director of its accused Zillow Mortgage Marketplace, testified that lenders may compete without making binding offers to potential borrowers.

> **Q.** Now, lenders compete for customers business on Zillow Mortgage Marketplace, correct?
>
> **A.** Yeah. They compete by showing their rates and by showcasing their ratings and reviews so consumers can get a sense of which lender they want to work with.
>
> **Q.** So as you indicated, one of the way[s] (sic) the lenders compete is that they provide rate quotes, correct?
>
> **A.** Correct.

A10608.

There is nothing in the specification to support importing the district court's complicated construction of "offer" ("a proposal to extend credit that can be accepted by the user to create mutual assent [i.e. contract/binding promise]") into

---

[8] This unasserted claim is the only claim cited in this portion of Zillow's brief.  *See* RedBr. 43.

claims that do not use the term "offers."  This Court has cautioned "it is important not to import [limitations] into a claim [ ] that are not part of the claim." *Superguide Corp. v. DirecTV Enterprises, Inc.,* 358 F.3d 870, 875 (Fed.Cir.2004). Here, Claims 1 and 22 from the '816 Patent, and Claim 1 from the '594 Patent do not contain the term "offers."

"Offers" is only found in the whereby clause of unasserted Claim 7 from the '816 Patent and cannot be read into claims that do not contain that term.  "It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed.Cir.1985).  This Court should vacate the district court's construction of the "whereby" clauses and construe those clauses according to their ordinary meaning or, at a minimum, remove the improper limitation that lending institutions must compete "by electing to make ***offers*** to the computer user."

### D.  The District Court's Erroneous Constructions And Its Importation Of "Offer" Into The "Whereby" Clause Was Highly Prejudicial To LendingTree

Zillow argues, without support, that LendingTree did not suffer any prejudice because the district court correctly construed the claims.  RedBr. 44.  As pointed out in LendingTree's opening brief, this is simply untrue.  *See* BlueBr. 20-

22, 32-36.  Moreover, Zillow does not contest that if *any* of the district court's constructions were incorrect, then LendingTree suffered prejudice and is entitled to a new trial on the issue of infringement.  *See* BlueBr. 22, 36.  Thus, if this Court vacates any of the district court's disputed constructions, the noninfringement verdict should be vacated and this case remanded.

Here, the district court's erroneous constructions were highly prejudicial to LendingTree.  Zillow argued throughout the trial that it did not collect "credit data" under the district court's construction because its service did not initially request a borrower's Social Security number or other information (such as a name and birthdate) necessary to close a loan and collected on a Form 1003.  A10592, A10760-61, A10762, A10788, A10947, A10987.  This noninfringement argument rested entirely upon the district court's erroneous construction of "credit data," and is contrary to the preferred embodiments of the patent.

Similarly, the district court's constructions of "offer" and "positive credit decision" and importation of "offer" into the "whereby" clause were all highly prejudicial to LendingTree.  Zillow used the district court's erroneous construction to argue LendingTree's claims required a *per se* contract or loan agreement and that there could be no infringement under the district court's construction of "offer" if, after the transmission of an "offer," any additional information were exchanged to close a loan.  *See,* A10391; A10394; 10396; A11244.  Again,

LendingTree's patent claims do not require the formation of a contract, or closing of a loan.

Furthermore, importing "offers" into the "whereby" clauses was also highly prejudicial to LendingTree. Not only because the construction of "offers" was erroneous, but also because the district court imported the term into a phrase where it did not exist, and into claims where the term does not appear. For example, Claims 1 and 22 of the '816 Patent does not use the term "offer" at all, and only requires "competition" without reference to "offers." A534.

There was ample evidence that Zillow's accused service infringes LendingTree's patents under any of the correct constructions. *See, e.g.*, A10600-601. Accordingly, should this Court vacate any of the district court's constructions of the disputed terms, it should remand the case for a new trial under the proper constructions.

## II.    THE DISTRICT COURT COMMITTED EVIDENTIARY ERRORS THAT SERIOUSLY PREJUDICED LENDINGTREE

### A.    LendingTree Was Improperly Denied Its Right to Examine Zillow's Key Expert Using the Patent Specification

The district court abused its discretion by prohibiting LendingTree from cross-examining Zillow's expert, Marshall Dennis, using the patent specification. A key issue at trial was whether and when the Asserted Claims require transmission of a Social Security number to lenders.

Zillow's primary noninfringement argument is that a credit application containing a user's Social Security number must be provided to lenders in stage 8. RedBr. 49.  As an initial matter, the detailed description of the preferred embodiments states that "credit data" from Table **150** (which is specific to the type of loan or credit contemplated) is provided to lenders – not the application.  A532, 5:53-56.  Thus, this argument is not applicable to claims where only "credit data" is transmitted to lenders–*e.g.*, Claims 1, 18 and 22 from the '816 Patent.  Furthermore, even for claims where the qualification form is provided to lenders–*i.e.*, Claim 1 of the '594 Patent–there is no requirement in the specification that the qualification form collect a user's Social Security number.

At trial, Zillow introduced noninfringement testimony from Dennis arguing the Asserted Claims require transmitting a user's Social Security number to lenders in Stage 8.  On cross, LendingTree attempted to walk Dennis through the preferred embodiment of the patents to show the jury that Dennis'ss testimony was inconsistent with the specification (even under the district court's construction):

> Q.  The sentence [from the specification for the '816 Patent] says that, "The lending institution has the borrower's name and the Social Security number" … Now, you can understand that the borrower's name and Social Security number were not sent prior to acceptance, right?

A10768 (discussing A533, 7:6-10).

Zillow argues that LendingTree's question placed the district court's claim construction at issue. RedBr. 47. But the district court refused to construe "credit data" so narrowly as to require a Social Security number or the information entered on a Form 1003. A10775, 11099.

At trial, Zillow objected to LendingTree's examination of Dennis with the specification, claiming that LendingTree was "trying to reargue claim construction through [Zillow's] expert." A10768. LendingTree responded that Zillow's expert testified that a "Social Security number is required and that is inconsistent with the specification. LendingTree is entitled to [examine] that." A10769. Zillow responded that the specification should not be considered because asking questions about the specification was going back "to see whether the claim construction is right or wrong." *Id.* The district court was swayed by Zillow's incorrect argument and erroneously upheld Zillow's objection.[9] *Id.*

This Court has recognized the patent specification is relevant to the issue of infringement beyond claim construction. *See, e.g.*, *Tessera,* 646 F.3d at 1365–1366 (it is not "claim construction" to demonstrate

---

[9] Zillow's contention that LendingTree was reprimanded by the district court for challenging the district court's claim construction fails to disclose that Zillow's improper objection and argument misled the district court to issue the reprimand. RedBr. 22.

inconsistencies in a party's infringement theory by showing how that theory

excludes the preferred embodiment from practicing the invention). Here,

LendingTree sought to demonstrate inconsistencies in Zillow's non-

infringement theory and to undermine the credibility of its expert by

showing his inaccurate and incomplete understanding of the patents. Thus,

questioning Dennis regarding whether the specification required a Social

Security number was proper and should have been permitted by the district

court. After the district court repeatedly barred LendingTree from using the

specification to examineDennis, LendingTree ended its examination and

moved for a mistrial.

### B. The District Court's Prohibition On Crossing Dennis With The Specification Was Highly Prejudicial To LendingTree

Zillow repeatedly introduced testimony from Dennis that limited the

application of the district court's claim construction so severely even preferred

embodiments were excluded from coverage. This included:

- Testimony that the "credit data" must include information sufficient to generate a credit report and "you have to have the borrower's name, Social Security number, and date of birth." A10760;

- Testimony that the "credit data" must also include a credit report and the address of the property for which a loan is being sought. A10761;

- Testimony that "credit data" must include "the subject property address … borrowers name, their Social Security number, their date of birth and their present address." A10762;

- Testimony that an "offer" or "positive credit decision" can only occur after a lender receives a "completed [Form] 1003 which gives them … the information to order verifications of employment, the credit report, and to order the appraisal."  A10763

Dennis'ss testimony that "credit data" had to include at least a Social Security number, name and birthdate, and that "offer" had to lead to the closing of loan, was the foundation for Zillow's entire non-infringement defense and was relied upon by Zillow's other witnesses and used to cross-examine LendingTree witnesses.  *See* A10788, 10947, 10987.  Thus, the district court's prohibition on cross-examining Dennis with the specification was highly prejudicial to LendingTree.

Zillow argues LendingTree suffered no prejudice because after Dennis was released, the district court stated that LendingTree could have cross-examined Dennis within the confines of its claim construction.  RedBr. 51.  But the district court's construction does not require that "credit data" include a Social Security number or any other specific item of information.  A10775, A11099.  Thus, when the district court barred LendingTree from examining Dennis regarding the use of a Social Security number within the specification, it barred LendingTree from examining Dennis within the confines of its constructions (or alternatively, re-construed "credit data" to require a Social Security number).

Zillow also argues that LendingTree suffered no prejudice because it was able to use the specification to examine its own witnesses.  RedBr. 51-52.  This is

-40-

immaterial. Establishing on cross that Dennis did not understand the scope of the specification and that his noninfringement theory was contrary to the detailed description of preferred embodiments would have undermined Zillow's non-infringement defense and could not be rectified by discussing the specification with LendingTree witnesses. In effect, the district court endorsed Dennis'ss testimony.

LendingTree had a right to confront Dennis with the specification to reveal to the jury the fundamental flaws in Zillow's non-infringement positions. Thus, regardless of the district court's claim construction, LendingTree should be granted a new trial in which it will be permitted to fully exercise its right to cross-examination.

### C. LendingTree Did Not Waive Its Objections To Zillow's Use Of Testimony from Unrelated Litigations

There is no dispute that LendingTree brought a motion *in limine* to exclude irrelevant testimony from the *IMX* and *SST* cases and, after having two objections to Zillow's use of such testimony overruled in front of the jury, LendingTree requested a continuing objection. *See,* A10394, 10395, 10396. Nevertheless, Zillow argues that LendingTree waived its objections to Zillow's questions because underlying documents were admitted into evidence. RedBr. 53-54. The mere admission of a document into evidence does not permit counsel to use that

document to make irrelevant and unduly prejudicial arguments. *See* Fed.R.Evid. 403.

Zillow repeatedly used testimony regarding claim constructions from the *IMX* and *SST* cases – which applied to patents held by IMX and SST that were asserted against LendingTree's service – to argue that LendingTree's patent claims (which were construed differently from the *IMX* and *SST* patent claims) could not be asserted against Zillow's service. Zillow even altered language from the *IMX* and *SST* cases, and from the district court's claim construction in this case, to improperly make the cases appear more similar. *See, e.g.*, A10946.

The district court acknowledged the claim constructions from *IMX* and *SST* were irrelevant but permitted the testimony as allegedly shedding light on LendingTree's credibility. A37. Because LendingTree was found to infringe the *IMX* and *SST* patents, the district court essentially endorsed an improper prior "bad acts" argument for Zillow. Zillow took full advantage of the district court's "endorsement" to argue that LendingTree and its witnesses were dishonest and serial infringers. References to the *IMX* and *SST* litigations occupied more time than almost any other issue in the case. *See* A10392-398, 10610-613, 10945-948, 10952-53, 11243-45, 12087, 12108, 12127, 12362, 12450. The distraction caused by this irrelevant testimony significantly prejudiced LendingTree's right to put on its infringement case. The jury was faced with claim construction arguments

-42-

involving different patents and different services, from different cases.  Juries are

not equipped to deal in claim construction, nor to compare constructions of

unrelated patents from different cases.  *See Markman v. Westview Instruments,*

*Inc.*, 517 U.S. 370, 389 (1996).

## III.    THE FINDING OF IMPROPER INVENTORSHIP SHOULD BE VACATED

### A. The PTO's Correction Moots The Inventorship Issue

As Zillow acknowledges, the PTO may exercise jurisdiction to correct

inventorship of a patent.  RedBr. 56-57.  When denying LendingTree's motion to

hold a hearing to correct inventorship, the district court explicitly instructed

LendingTree "[i]f the [district c]ourt does not exercise jurisdiction over the

inventorship dispute, the inventorship dispute may be resolved by the PTO."  A33.

The district court then denied LendingTree's motion stating it was exercising its

discretion to decline making a determination regarding inventorship.  *Id.*

LendingTree disagrees that the district court properly interpreted §256 of the

Patent Statute when it declined to make a determination regarding inventorship.

BlueBr. 51-55.  However, this issue is now moot.  As set forth in LendingTree's

Opening Brief, and acknowledged in Zillow's Responsive Brief, LendingTree

submitted a request to correct inventorship to the PTO.  BlueBr. 60; RedBr. 59.

The Patent Office has now corrected the inventorship of LendingTree's patents.

A13207-08.

Because the PTO has addressed and resolved the inventorship dispute – an outcome expressly contemplated in the district court's order – this Court should vacate the finding of improper inventorship.

## B. Inventorship Was Correctable – As Shown By The PTO's Correction

To the extent this Court seeks to address the issue, LendingTree will also address Zillow's arguments regarding whether the district court, or this Court, can correct inventorship of the patents.

Zillow contends the inventorship of LendingTree's patents could not be corrected by the district court. RedBr. 59. This is incorrect and unsupported by the record. The district court elected "in its discretion" not to resolve the inventorship dispute. A33. Rather, the district court told LendingTree to bring the inventorship dispute to the PTO – implicitly finding inventorship could be corrected by the PTO. *Id.* The PTO was provided with the same information as the district court and has corrected the inventorship of LendingTree's patents. [10] Thus, the patents were undeniably correctable.

---

[10] The PTO was provided with over 700 pages for each patent detailing the inventorship dispute, including copies of the jury's verdict, the parties' post-trial briefing regarding the inventorship dispute with supporting exhibits, and the district court's decision. *See* A13209-10.

### C. The General Verdict Supports A Separate Proceeding To Consider Inventorship

Zillow argues that correcting inventorship would purportedly require "making findings that conflict with those necessarily determined by the jury." RedBr. 64. This is incorrect. The jury did not provide specific findings regarding inventorship. Thus, correction to add James Bennet as an inventor does not conflict with a specific finding by the jury.

Moreover, correcting inventorship under §256 is not contingent on the jury identifying the correct inventors. *See* 35 U.S.C. §256. Nowhere does the statute require the district court or PTO defer to a jury's identification of the correct inventors—nor does the case law impose such a requirement. *See generally Marketel Int'l, Inc. v. Priceline.com*, 138 F. Supp. 2d 1210, 1213 (N.D. Cal. 2001) ("Correction of inventorship under section 256 is resolved by bench trial and is ***not submitted to a jury***.") (emphasis added); *Ethicon, Inc. v. U.S. Surgical Corp.*, 921 F. Supp. 901, 902, 905 (D. Conn. 1995); *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005). §256 plainly states the "error of omitting inventors or naming persons who are not inventors ***shall not*** invalidate the patent in which such error occurred if it can be corrected"—without any caveats as to a jury's findings. 35 U.S.C. §256 (emphasis added). Because §256 contemplates a hearing to correct inventorship, even after a patent has been found invalid for

-45-

improper inventorship, the district court (and the PTO) could properly correct the patents.

### D. The Jury Could Not Have Considered Claim Language That Was Not Before It

The most the jury could have concluded is that Bennet was an unnamed inventor. The legal test for inventorship is whether a co-inventor makes a contribution to a single claim. *See Eli Lilly*, 376 F.3d at 1361-62 (emphasis added); *see also Ethicon*, 135 F.3d at 1460; A11158. If Zillow wanted to prove that Lebda and/or Stiegler were improperly named inventor(s), then Zillow needed to address each and every claim of both patents and prove, by clear and convincing evidence, that Lebda or Stiegler did not contribute to a single claim in the patents.

Zillow argues that witnesses testified that a March 1997 business plan disclosed all the steps of the patented inventions. RedBr. 61. But LendingTree's witnesses testified that the inventions were not ready for patenting until Mr. Stiegler became involved and thus were not fully conceived until Stiegler contributed to the inventions. A11042-43.

Furthermore, the expert testimony presented by Zillow and its co-defendants related only to the asserted claims. Zillow's expert Glenn Weadock expressly limited his opinion to the Asserted Claims. A7280 (Weadock Opening Expert Rpt., (¶1) ("I have been asked by defendants Zillow and Adchemy to provide my

expert analysis and opinions . . . specifically with regard to asserted claims 1-3 and 6-14 [of the '816 Patent and] specifically with regard to claims 1-9, 11, and 18-24 [of the '594 Patent.]").  LendingTree's expert Joseph McAlexander testified regarding the conception date of LendingTree's *asserted* claims.  A7303 (stating "LendingTree['s] *asserted* claims, corresponding to the Patents-in-suit [are] subject to this Expert Report")) (emphasis added).

Zillow and its co-defendants did not present evidence regarding the non-asserted claims.  Because Zillow did not put in sufficient evidence to show that either Lebda or Stiegler failed to contribute a single element to a single claim, the jury verdict could only support a finding that Bennett was an unnamed inventor.  An omission that has now been corrected by the PTO.

## ZILLOW'S CROSS-APPEAL

## IV.   THE CLAIMS ARE NOT UNPATENTABLY ABSTRACT

Section 101 defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. §101.  An exception to this are "laws of nature, natural phenomena, and abstract ideas[.]"  *Diehr*, 450 U.S. 185.

To determine whether a patent covers an abstract idea outside §101, the Court first considers whether the claims are "directed to" an abstract idea.  *Mayo*, 132 S.Ct. at 1296-97.  If they are, the Court considers whether the claims' elements

"add enough to their statements of the [abstract idea] to allow the processes they describe to qualify as patent-eligible processes that apply [the abstract idea]." *Id.* at 1297. The Supreme Court has "described step two of this analysis as a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S.Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1294) (alteration in original).

Claims should be a considered as a whole, not piecemeal. "This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Diehr*, 450 U.S. at 188. Here, the Asserted Claims independently satisfy each step of the *Alice/Mayo* test.

### A. Step One: The Claims Are Not "Directed To" an Abstract Idea

At step one, the Court makes a threshold determination "whether the claims at issue are directed to a patent-ineligible" abstract idea. *Alice*, 134 S.Ct. at 2355. Here, they are not.

Representative Claim 1 of the '594 Patent recites:

A method for coordinating an electronic credit qualification form between an Internet user and a plurality of lending institutions via the Internet, comprising the steps of:

a) receiving selection criteria from the plurality of lending institutions;

b) storing the selection criteria in a database;

c) displaying a plurality of documents in a web site;

d) receiving a plurality of credit data sent from the Internet user;

e) applying said credit data to a filter comprising the plurality of selection criteria of the database to select without manual intervention each one of said plurality of lending institutions associated with a match of said credit data to said selection criteria;

f) determining an appropriate transfer method to transmit said electronic credit qualification form to the lending institutions associated with a match of said credit data;

g) transmitting said electronic qualification form comprising said credit data to said plurality of lending institutions associated with a match of said credit data via said appropriate transfer method, the transmission of said electronic qualification form comprising said credit data occurring without a delay for reception of any credit decisions from said lending institutions;

h) receiving a plurality of positive credit decisions from said plurality of lending institutions associated with a match of said credit data regarding an offer of credit or a loan to the Internet user;

i) simultaneously displaying the plurality of positive credit decisions to the Internet user on the web site;

j) receiving via the web site at least one decision from the Internet user regarding at least one of the positive credit decisions, the Internet user's decision comprising an acceptance, denial or request for more information regarding a positive decision for one of said lending institutions associated with a match of said credit data; and

k) transmitting at least one Internet user's decision to at least one lending institution corresponding with a positive credit decision so that said Internet user can obtain credit or a loan from one of said lending institutions associated with a match of said credit data,

whereby said lending institutions associated with a match of said credit data compete with each other for business with the Internet user.

A514.

And representative Claim 22 of the '816 Patent recites:

A system for coordinating business between a computer user and a plurality of lending institutions comprising:

a processing unit;

a memory storage device; and

a program module, stored in said memory storage device for providing instructions to said processing unit;

said processing unit responsive to said instructions of said program module, operable for

receiving selection criteria from a plurality of lending institutions;

receiving credit data sent from the computer user;

employing the selection criteria to filter the credit data and to automatically select one or more lending institutions from the plurality of lending institutions; and

forwarding the credit data to the selected one or more lending institutions;

whereby the selected lending institutions compete with each other for business with the computer user.

A534.

Although there is a dispute regarding the district court's construction of

"credit data," "offers," "positive credit decisions" and the district court's

importation of "offers" into all the "whereby" clauses, there is no dispute that the

patents teach and claim a specific method of employing a filter and engendering

simultaneous competition among lenders.[11]  Every claim element is in service of, and necessary to, the recited method of automating simultaneous competition among lenders.

### 1.  Supreme Court Precedent Confirms That The Claims Are Not "Directed To" an Abstract Idea

The Supreme Court has recognized two categories of claims that implicate the abstract-ideas exception.  The first concerns claims covering algorithms, in the form of mathematical formulas, that are used for calculating numbers.  In *Parker v. Flook*, 437 U.S. 584 (1978), for example, the Court held that a claim covering a formula for calculating "alarm limits"—which were simply "a number"—was an unpatentable abstract idea.  *Id*. at 585.  Similarly, in *Gottschalk v. Benson*, 409 U.S. 63 (1972), the Court held that a claim to a mathematical formula for converting binary-coded decimals into pure binary numerals was unpatentably abstract.  *Id*. at 64.  Second, the Court has found "fundamental economic practice[s]" ineligible.  *Alice*, 134 S.Ct. at 2356-57.  In *Alice*, the Court invalidated claims directed to "intermediated settlement."  *Id*.  In *Bilski*, the Court held that claims directed to "hedging risk" were abstract ideas.  561 U.S. at 609.  The claims here do not fit within those categories.

---

[11] The parties do not dispute in this appeal the district court's construction of the "whereby" clauses as requiring "simultaneous competition."  A12, A11152.

Instead, the Asserted Claims are like the claim in *Diehr* which the Supreme Court held was not directed to an abstract idea. The claim there was for a "method of operating a rubber-molding press for precision molded compounds with the aid of a digital computer." 450 U.S. at 179 n5. It recited the use of a mathematical formula, the "Arrhenius equation," as part of a "step-by-step method" for curing rubber. *Id*. at 179 & n.5, 184. The Court explained that "Arrhenius' equation is not patentable in isolation." *Id*. at 188. But the claim was not directed to "patent[ing] [that] mathematical formula." *Id*. at 187. Instead, it sought "patent protection for a process of curing synthetic rubber." *Id*. That process required a using a computer to continuously monitor the temperature of rubber and constantly recalculate the cure time – steps that were "new in the art." *Id.* at 179. The continuous timing step in *Diehr* is very similar to the simultaneous timing requirement in LendingTree's patents.

Zillow argues that LendingTree's patents are directed to the abstract concepts of "comparing credit information to lending criteria" and/or "a credit application clearinghouse." Zillow is incorrect and its inability to even identify a specific abstract idea reveals the weakness of its argument. *See DDR Holdings*, p. 19. LendingTree's patents require far more than merely comparing credit information to lending criteria. The patent claims expressly require at a minimum a specific method of collecting user information (via an electronic qualification

form), collection of selection criteria from multiple lenders, automatic culling of relevant user information from the electronic qualification form, automatic electronic filtering of user information against multiple lender criteria, transmission of qualifying users to multiple lenders, and simultaneous competition between lenders for business with the user. A533-534. This is a far more detailed and limited invention than acknowledged by Zillow.

Nor are the Asserted Claims directed to the general concept of a credit application clearinghouse. In *Dealertrack, Inc. v. Huber*, this Court described the basic concept of a clearinghouse as simply "receiving data from one source, selectively forwarding the data, and forwarding reply data to the first source." 674 F.3d 1315, 1333 (Fed.Cir.2012). LendingTree's Asserted Claims are far more detailed than this. The *Dealertrack* claim required nothing more than "selectively forwarding" a credit application. *Id. Dealertrack*'s claims, by being "silent" as to how and to what extent a computer aids the claimed method, would "wholly preempt the clearing house concept"—*i.e.*, receiving data, selectively forwarding it, and forwarding reply data. *Id.* Thus, the *Dealertrack* process could not be avoided in any loan transaction that involves any computer. For example, if a lender were to forward a funding decision after using a pocket calculator to add two numbers from a borrower's credit application, that would fully satisfy the purported "computer aided" limitation of the *Dealertrack* claims.

In contrast, LendingTree's Asserted Claims specify that lending institutions are selected to receive credit data by "employing the selection criteria to filter the credit data," and, "for the plurality of lending institutions, comparing the user's credit data to the lending institution's selection criteria to determine whether the credit data satisfy the selection criteria." A533-534. LendingTree's claims further require the precise interaction of multiple computers from multiple lenders, and simultaneous competition. *See* A533-534. Thus, unlike *Dealertrack*, LendingTree's claims are not directed to the broad ideas of a credit application clearing-house, do not preempt the field of clearing-houses, nor cover every conceivable manner of supplying offers for credit to a computer user.

### 2. LendingTree's Patented Invention Cannot Be Performed Manually

Zillow argues that LendingTree's invention is nothing more than a mental process that has long been performed manually and cites deposition testimony suggesting that certain steps of the patented process and system are found in the prior art. RedBr. 70-71. However, Zillow misconstrues the testimony and the patented invention, and Zillow ignores key aspects of LendingTree's invention. For example, Zillow argues that placing a paper application in a file is the same as the patented inventions' description of collating relevant items of information from an electronic application form in an electronic table and then automatically sending

limited credit data from this table to relevant lenders. *Compare* RedBr. 71

(referring to "step 4" and citing A2858, 259:10-13) *with* A531, 4:31-37:

> FIG. 4 shows stage 4, wherein in step 20 the data from the completed
> application 115 is encrypted by SSL technology. Next in step 21, at
> the borrower's instruction, this information is sent to the computer
> 100, unlocked and stored in storage device 110 for further
> manipulation. In this stage, the data from completed application 115
> is sorted and stored in tables 150 in database 140 based on the type of
> loan requested[.]

Moreover, Zillow never compares the cited testimony to the Asserted Claims. In

particular, the requirement for simultaneous competition is ignored. A12, A11152.

None of the testimony cited by Zillow shows that the prior art used a single

electronic qualification form to engender simultaneous competition among lenders

in favor of a potential borrower. This invention was new in the art and required

precise programming of multiple computers that must operate in a specific manner

to provide simultaneous competition. A10779, 10785. The Asserted Claims

require the interaction of multiple separate computers: the user's computer, the

hosting service's computer, and a lender's computer. A514, A533-534. These

computers must interact in a very specific manner and provide a concrete limited

application of a lead/loan coordination system.

As in *Diehr*, the Asserted Claims do not seek to patent a "mathematical

formula" or any other abstract concept. Instead, they cover a specific, step-by-step

process—implemented through software using multiple computers—for providing

users with access to multiple credit providers and real-time simultaneous competition of those credit providers.  Just as *Diehr's* use of a computer to take continuous measurements rendered those claims eligible, LendingTree's use of multiple computers to engender simultaneous competition should be "eligible to receive the protection of our patent laws."  *Diehr*, 450 U.S. at 184.

## B. Step Two: The Claims Recite a Patent-Eligible Application

Step two of the *Alice/Mayo* framework assumes the Court has found the patent claims are directed to an abstract idea at step one.  Because the claims here are not directed to an abstract idea the Court need go no further.  But even if the Court attempts to specifically define an abstract idea (which Zillow could not), the implementation here "add[s] enough ... to allow the [claimed] processes ... to qualify as patent-eligible processes that apply" any putative abstract idea.  *Mayo*, 132 S.Ct. at 1297.

### 1. The Inventive Concepts Recited in the Claims Represent a Specific Application

The Asserted Claims satisfy step two of the *Alice/Mayo* analysis because they reflect an "'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon" any purported abstract idea "itself."  *Alice*, 134 S.Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1294).

As explained in *BuySafe*, an "inventive concept" may also be described as a "claimed contribution to the art." 765 F.3d at 1356 n.1. In *BuySafe*, this Court explained that the invention in *Diehr* was patent eligible because of its "'inventive application' in the technology of curing synthetic rubber." *Id.* This "inventive application" consisted of a new timing "step of 'constantly measuring the actual temperature in the mold'[.]" *Id.* (quoting *Diehr*, 450 U.S. at 178, 179 n.5). Here, the Asserted Claims contain several inventive concepts. Foremost, they recite a specific method to produce simultaneous real-time competition among credit providers in favor of borrowers–a timing step "new in the art." *Diehr*, 450 U.S. at 179. The patented systems coordinate business between a potential borrower and multiple lenders, identifying, transforming, and sharing information based on specific business, credit, and technological parameters of the borrowers and lenders. *See, e.g.,* A511-13 (1:34–44; 2:8–17; 5:17–26). Thus, this results in *simultaneous* competition–a feature new in the art. A12, A11152.

Unlike the cases cited by Zillow, here, the district court had a wealth of underlying factual evidence to consider when it found LendingTree's patents eligible. This difference is significant, and this Court should defer to the district court's consideration of such factual evidence. As set forth in detailed testimony on the record, prior to the patented system, shopping for a mortgage was always a daunting task where would-be borrowers suffered a substantial competitive

disadvantage compared to lending institutions. A10778. At the time the '594 and

'816 Patent inventions were conceived, there was no defined forum in which

prospective borrowers could find out whether they were receiving a competitive

loan offer. A10778-79. Filling out separate forms and interacting with multiple

lending institutions was a lengthy and burdensome process, and did not give

potential borrowers any assurance that a lender had any significant interest in

extending a loan to them. A511, A530, A10777-79. Thus, before the patented

invention, lending institutions would receive information from prospective

borrowers via individual Form 1003 loan applications and through the

underwriting process where borrowers "appl[ied] for individual loans at individual

banks. And it was very cumbersome, very time consuming." A10270, 10777-78.

Loan rates frequently changed and borrowers received seriatim non-simultaneous

offers from lenders. A10779. These were not real-time simultaneous rate-quotes,

and borrowers could never be certain that they were receiving comparable,

competitive offers from lenders. A10779. The patented invention provided a

system for borrowers and lenders to stage a competitive, efficient marketplace for

loan offers. A10779, A10792. The patented inventions also allow loans to be

offered in a non-discriminatory manner across a broader geographic and

demographic base than was previously available, and provided a better system for

lenders to receive applications from qualified potential borrowers and for

borrowers to secure competitive loan offers.  A10779, 10785-86.

Like the "inventive application" of a new timing step in the patent-eligible

invention in *Diehr*, LendingTree's inventions introduced new timing steps that

coordinate multiple computers in a limited manner to produce simultaneous

competition.  This new timing step constitutes an "inventive concept" that renders

LendingTree's Asserted Claims a patent-eligible application, for the same reason

that the *Diehr* claims are patent-eligible.

### 3. The Claims Do Not Preempt the Idea Comparing Credit Information to Lending Criteria Or Of A Clearinghouse

The Asserted Claims also do not implicate the fundamental "preemption

concern that undergirds" the abstract-ideas exception.  *Alice*, 134 S.Ct. at 2358.

Contrary to Zillow's assertions, the claims do not seek to patent "well-understood,

routine activities previously known to the industry," nor to wholly pre-empt the use

of a computer for generating leads related to credit applications.  RedBr. 71.

In *Internet Patents Corporation v. Active Network*, this Court explained

several prior decisions in the context of this preemption concern:

> Recent precedent illustrates this boundary [between abstraction and patent-eligible subject matter] in a variety of factual circumstances. *E.g., CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1375 (Fed.Cir.2011) (claims linked only to a general purpose computer preempted the abstract concept of detecting credit-card fraud based on past transactions); *Dealertrack, Inc. v. Huber,* 674

F.3d 1315, 1333-34 (Fed.Cir.2012) ("computer aided" mental process claims, unlimited in scope, preempted the idea of "selectively forwarding" credit data); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1344-45 (Fed.Cir.2013) (claims that implemented the abstract idea of generating tasks based on rules on the occurrence of an event, held ineligible because they preempted all practical uses of the abstract concept); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,* 758 F.3d 1344, 1351 (Fed.Cir.2014) (claims to a general process for combining two data sets into a device profile were "`so abstract and sweeping' as to cover any and all uses of a device profile" (quoting *Gottschalk v. Benson,* 409 U.S. 63, 68, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972))).

790 F.3d 1343, 1347 (Fed.Cir.2015).   LendingTree's Asserted Claims are far different from these cases.

LendingTree's Asserted Claims are also significantly different from the claims found ineligible in *Mortgage Grader, Inc. v. First Loan Choice Services*, Case No. 15-1415 (Fed.Cir. Jan. 20, 2016).  In that case, the claims described nothing more than a searchable database that could be run in a single computer with only two interfaces.  *Id.* pp. 4-5.  Thus, the claims were very similar to the database claims this Court held ineligible in *Accenture* (described above).  *Id.* p. 16.  Furthermore, the steps from the *Mortgage Grader* claims could be performed without a computer.  *Id.* p. 15.

LendingTree's Asserted Claims are explicitly limited to a defined process involving multiple computers that must operate in tandem to produce simultaneous competition and cannot be performed without multiple computers.  Thus, LendingTree's Asserted Claims do not preempt the entire broad field of

"comparing credit information to lending criteria" or of a "credit application
clearinghouse." RedBr. 69. On the contrary, LendingTree's patents are a limited
application of a complex process for coordinating credit applications to result in
simultaneous competition by lenders. Other methods exist for comparing credit
information to lending criteria, generating leads related to credit applications, or
handling credit applications without infringing LendingTree's patents. These
include prior art systems for handling leads and credit applications, and systems
that use seriatim rather than simultaneous competition. Thus, LendingTree's
patents do not preempt an abstract field and the district court properly found the
Asserted Claims patent-eligible.

### 4. LendingTree's Patents Do Not Rise And Fall With *Ultramercial*

Zillow argues that LendingTree is estopped from arguing that its claims are
patent-eligible because in prior briefing LendingTree favorably compared certain
aspects of the Asserted Claims to this Court's prior analysis in *Ultramercial, Inc. v.
Hulu, LLC*, 722 F.3d 1335 (Fed.Cir.2013).[12] RedBr. 75. As an initial matter, a
comparison to one-time controlling case law is not a binding admission, and Zillow
cites no authority suggesting otherwise.

---

[12] This decision was vacated in light of the Supreme Court's *Alice* decision. On
remand this Court held the *Ultramercial* claims patent-ineligible. *See
Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed.Cir.2014).

Furthermore, Zillow is wrong on the law.  In general, the doctrine of judicial estoppel requires:

(1) A party's position in a case or controversy must clearly conflict with a position taken in an earlier matter;

(2) That party must persuade a court to have accepted its earlier position such that the acceptance of an inconsistent position in the later proceeding creates the perception that the party must have misled either the first or second court; and

(3) Whether the party derives an unfair advantage from the change in position or imposes an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 523 U.S. 742, 750-751 (2001).  Zillow has failed to show that any of these factors apply to LendingTree.  LendingTree previously asserted its claims are patent-eligible in the district court, pointing out that its Asserted Claims contained multiple detailed steps that involved inherently complex computer programming.  A3212.  LendingTree continues to assert that its Asserted Claims are patent-eligible, and that the claims contain multiple detailed steps that involved inherently complex computer programming.  But LendingTree is not limited to a comparison to *Ultramercial.*  In the district court, LendingTree also asserted that its claims do not describe an intangible abstract idea and are directed toward an applied process.  A3204-05, A3214-15.  Thus, LendingTree's arguments before the district court do not conflict with its arguments here, and LendingTree is not estopped from arguing that its Asserted Claims are patent-eligible in this Court.

-62-

Furthermore, Zillow has failed to suggest or point to any evidence that LendingTree misled the district court in its prior briefing.  Nor has Zillow suggested that LendingTree has somehow derived an unfair advantage from continuing to maintain that its Asserted Claims are patent-eligible.  Thus, Zillow's estoppel argument is frivolous and should be disregarded.

## CONCLUSION

The district court's claim constructions of "credit data," "offer," and "positive credit decisions," impose limitations on those terms that are unsupported by the specification and contrary to preferred embodiments explicitly described in the specification.  The district court's constructions should be vacated.  Furthermore, the district court's importation of "offers" from unasserted Claim 7 of the '816 Patent into the "whereby" clause of Claim 1 of the '594 Patent and Claims 1 and 22 of the '816 Patent was improper.  All these claim construction errors seriously prejudiced LendingTree at trial and correction of any of these errors should result in remand.

The district court also improperly prohibited LendingTree from cross-examining Zillow's key non-infringement expert using the patent specification to show that the witness did not understand the patents and that Zillow's noninfringement arguments were unsupported and not credible.  The district court

further permitted Zillow to make improper and misleading arguments using testimony from prior litigations involving unrelated patents over LendingTree's proper objections.  These evidentiary errors improperly endorsed Zillow's non-infringement position and allowed Zillow to paint LendingTree as a serial infringer and bad actor.  Thus, regardless of the Court's decision on the disputed claim constructions, the Court should vacate the jury's verdict of non-infringement and remand this case to the district court for a new trial.

The district court instructed LendingTree to raise the inventorship issue with the PTO.  LendingTree followed these instructions and the PTO has now corrected the patents.  Accordingly, the Court should reverse the judgment of invalidity due to improper inventorship.

//

//

//

//

//

//

//

//

//

Finally, the district court properly found that LendingTree's Asserted Claims are drawn to patent-eligible subject matter.  Because the claims do not preempt an ineligible abstract idea and are drawn to a patent-eligible application of a limited system for coordinating ecommerce between users and lenders to engender simultaneous competition, the Court should uphold the district court's finding of eligibility.

DATED:  January 21, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Stephen S. Korniczky* _____
Stephen S. Korniczky

Attorneys for
Plaintiff – Appellant LendingTree, LLC

# CERTIFICATE OF SERVICE

*LendingTree, LLC v. Zillow, Inc., et al.*,
Case Nos. 14-1435, 14-1531, 14-1532, 2015-1186

In accordance with Fed. R. App. P. 25 and Fed. Cir. R. 26, this is to certify

that on January 21, 2016, the foregoing **APPELLANT LENDINGTREE, LLC'S**

**RESPONSE AND REPLY BRIEF** was filed with the Clerk of the Court using

the CM/ECF System, which will serve via email a copy of the foregoing document

on all the following counsel of record registered as CM/ECF users:

Lynn Pasahow, lpasahow@fenwick.com
J. David Hadden, dhadden@fenwick.com
Carolyn Chang, cchang@fenwick.com
Saina S. Shamilov, sshamilov@fenwick.com
Todd Richard Gregorian, tgregorian@fenwick.com
Ravi Ragavendra Ranganath, rranganath@fenwick.com
Yevgeniya A. Titova, etitova@fenwick.com

    I further certify that, upon acceptance and request from the Court, the

required paper copies of the foregoing will be deposited with Federal Express for

delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE

FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

    The necessary filing and service was performed in accordance with the

instructions given to me by counsel in this case.

Dated:  January 21, 2016　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　/s/ *Amy Mertens*
　　　　　　　　　　　　　　　　　　　　　　　　Amy Mertens

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a) TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 13978 words, excluding parts of the brief exempted by Federal Rules of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003, using 14 point Times New Roman font.

DATED: January 21, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Stephen S. Korniczky*_____
Stephen S. Korniczky

Attorneys for
Plaintiff–Appellant LendingTree, LLC