*Appeal Nos. 14-1435, 14-1531, 15-1186*

IN THE

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

LENDINGTREE, LLC,

*Plaintiff - Appellant,*

v.

ZILLOW, INC.,

*Defendant - Cross-Appellant.*

NEXTAG, INC., ADCHEMY, INC.,

*Defendants.*

Appeals from the United States District Court for the Western District of North Carolina in case no. 3:10-cv-00439-FDW-DCK
Chief Judge Frank D. Whitney

**REPLY BRIEF OF DEFENDANT-CROSS APPELLANT ZILLOW, INC.**

J. David Hadden (CSB No. 176148)
dhadden@fenwick.com
Saina S. Shamilov (CSB No. 215636)
sshamilov@fenwick.com
Todd R. Gregorian (CSB No. 236096)
tgregorian@fenwick.com
Ravi Ranganath (CSB No. 272981)
rranganath@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

*Attorneys for Defendant-Cross-Appellant
Zillow, Inc.*

February 18, 2016

## CERTIFICATE OF INTEREST

Counsel for Defendant and Cross-Appellant, Zillow, Inc., certifies the following:

1.    The full name of every party represented is:  Zillow, Inc.

2.    The name of the real party in interest represented is:  Zillow, Inc.

3.    Zillow, Inc. has no parent corporations and no publicly held companies own 10 percent or more of its stock.

4.    The name of the firm and the partners or associates that appeared for the represented party in the trial court, or are expected to appear in this Court, are:

FENWICK & WEST LLP:  J. David Hadden, Lynn Pasahow, Carolyn Chang, Saina S. Shamilov, Todd R. Gregorian, Ravi Ranganath, Yevgeniya A. Titova, Ryan A. Tyz, Elizabeth J. White;

HUNTON & WILLIAMS LLP: Frank E. Emory;

WOMBLE, CARLYLE, SANDRIDGE & RICE, LLP:  Mark P. Henriques, Sarah M. Stone.

Dated:  February 18, 2016                    Respectfully submitted,

*/s/ J. David Hadden*
                                J. David Hadden

*Attorneys for Defendant-Cross-Appellant*
*Zillow, Inc.*

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................................i

INTRODUCTION .................................................................................................1

ARGUMENT ........................................................................................................3

I.  THE LENDINGTREE PATENTS ARE DIRECTED TO PATENT-
INELIGIBLE SUBJECT MATTER UNDER SECTION 101. ......................3

    A.  This Court's Decisions in *Dealertrack* and *Mortgage Grader*
Control This Case. ................................................................................3

    B.  The Claims Are Directed to an Abstract Idea.......................................7

        1.  The LendingTree Patents Are Directed to the Abstract
Idea of Comparing Credit Applications to Lending
Criteria. .....................................................................................7

        2.  Abstract Ideas Are Not Limited to Mathematical
Formulas and Fundamental Economic Practices, and,
in any Event, Comparing Credit Applications to
Lending Criteria Is a Fundamental Economic Practice
and Thus an Abstract Idea. .......................................................11

    C.  The Claims Recite Generic Computing Elements that
Provide No Inventive Concept. ...........................................................13

    D.  The Claims Risk Preempting the Abstract Idea. .................................16

    E.  LendingTree's Admissions Regarding *Ultramercial* Show
that its Patents Claim Ineligible Subject Matter.................................17

II.  THE COURT SHOULD DISREGARD LENDINGTREE'S
ARGUMENTS BASED ON EVIDENCE OUTSIDE OF THE
RECORD. ..................................................................................................18

    A.  LendingTree Improperly Relied on Material Outside the
Record...................................................................................................18

B.    The Correction Certificates Do Not Moot the Inventorship Issue on Appeal Because They Correct Only One of Two Defects Supported by Substantial Evidence at Trial. .......................... 20

CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ..................................................................*passim*

*Am. Standard, Inc. v. Pfizer, Inc.*,
  828 F.2d 734 (Fed. Cir. 1987) ..........................................................19

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) ........................................................16

*Arlington Indus. Inc. v. Bridgeport Fittings, Inc.*,
  759 F.3d 1333 (Fed. Cir. 2014) ........................................................19

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*,
  687 F.3d 1266 1275, 1279 (Fed. Cir. 2012) .......................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015) ...........6, 11

*Dealertrack Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ...................................................*passim*

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ..........................................................10, 11, 14

*E-Loan, Inc. v. IMX, Inc.*,
  No. CBM2015-00012, Paper No. 19 (P.T.A.B. Feb. 16, 2016) ..........................9

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ........................................................17

*Intellectual Ventures II LLC v. JPMorgan Chase & Co.*,
  781 F.3d 1372 (Fed. Cir. 2015) ........................................................19

*Internet Patents v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .................................................9, 11, 13

*Mortgage Grader. Mortgage Grader, Inc. v. First Choice Loan Servs.,*
  *Inc.*, No. 2015-1415, 2016 U.S. App. LEXIS 1115
  (Fed. Cir. Jan. 20, 2016) ...........................................................*passim*

*Nazomi Commc'ns, Inc. v. ARM Holdings, PLC,*
    403 F.3d 1364 (Fed. Cir. 2005) ........................................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    788 F.3d 1359 (Fed. Cir. 2015),
    *cert. denied*, 136 S. Ct. 701 (2015)....................................................13, 15, 16, 17

*Stephens v. Tech Int'l, Inc.,*
    393 F.3d 1269 (Fed. Cir. 2004) ........................................................................15

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014),
    *cert. denied*, 135 S. Ct. 2907 (2015)....................................................8, 9, 12, 17

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC,*
    No. 2015-1411, 2015 U.S. App. LEXIS 22681
    (Fed. Cir. Dec. 28, 2015) ..................................................................................11

*Versata Dev. Grp., Inc. v. SAP Am., Inc.,*
    793 F.3d 1306 (Fed. Cir. 2015) ..................................................................12, 14

## RULES

Fed. Cir. Rule 27(e)...............................................................................................2, 18

Fed. R. App. P. 28.1(c)(4)........................................................................................18

## INTRODUCTION

If there was any room to distinguish the claims in the asserted LendingTree patents from the credit clearinghouse claims this Court previously found patent ineligible, that vanishingly small window was closed by this Court's decision last month in *Mortgage Grader*. *Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*, No. 2015-1415, 2016 U.S. App. LEXIS 1115 (Fed. Cir. Jan. 20, 2016). Whatever difference LendingTree argued exists between its claims and those found patent-ineligible in *Dealertrack*, they are indistinguishable from those held unpatentable in *Mortgage Grader*, which also recite a system for matching borrowers and lenders using generic computer components.

LendingTree argues that its patents are valid because the claims require specialized programming to create "simultaneous competition" among lenders. But this does not make the claims any less abstract, as the concept of simultaneous competition is itself an abstract idea—an idea that was also present in the claims held invalid by this Court in *Dealertrack* and *Mortgage Grader*. While LendingTree's patents may claim the result of "simultaneous competition," they do not disclose a way to achieve that result other than by use of generic computing equipment and software. Competition is a feature of every market. Using generic computers to facilitate competition is not an inventive concept.

LendingTree's patents are also patent ineligible for the same reasons as Ultramercial's. LendingTree repeatedly argued below its claims and Ultramercial's were similar. While LendingTree now contends that it should not be held to its admissions, it does not explain any way that its patents differ that avoids the conclusion that they are similarly ineligible.

Following the Supreme Court's decision in *Alice* and this Court's subsequent opinions, the Court can resolve this case on Section 101 grounds alone. LendingTree's patents automate an age-old mortgage lending process using generic computer components, and thus claim ineligible subject matter. The Court should reverse the district court's denial of summary judgment regarding Section 101 invalidity and direct the district court to enter a judgment of invalidity.

LendingTree also cites in its reply brief to extra-record evidence regarding its purported correction of inventorship of its patents at the Patent Office. As LendingTree did not request judicial notice or request to supplement the record, the Court should not consider this evidence or the arguments based on it.[1] If considered, however, this evidence does not change the outcome of the inventorship issue on appeal. The correction cured the defect of Bennett's nonjoinder, but it did not address Stiegler's misjoinder. As such it corrected only one of the two errors on which the jury could have based its verdict. The Court should therefore reject

---

[1] Zillow includes this argument in its reply instead of moving to strike, pursuant to Fed. Cir. Rule 27(e).

LendingTree's request to vacate the district court's judgment of invalidity, and it should not disturb the jury's verdict.

## ARGUMENT

## I.     THE LENDINGTREE PATENTS ARE DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER UNDER SECTION 101.

### A.     This Court's Decisions in *Dealertrack* and *Mortgage Grader* Control This Case.

The claims in this case mirror those invalidated in *Dealertrack* and *Mortgage Grader*.  The patents in both cases describe the idea of matching credit applicants with multiple lenders, and implement this idea using routine and conventional computing equipment and software.

The patent at issue in *Dealertrack* purported to cover a computer based credit application processing system.  It claimed an automated method and system for processing applications for car loans, "which receives credit application data from dealers, processes the data to conform to the individual application forms of different banks, forwards the completed applications to banks selected by the dealer, receives answers from the banks, and forwards those answers back to the dealer." *Dealertrack Inc. v. Huber*, 674 F.3d 1315, 1317 (Fed. Cir. 2012).

As this Court described it, the *Dealertrack* patent included three basic steps: (1) "receiving data from one source"; (2) "selectively forwarding the data"; and (3) "forwarding reply data to the first source."  *Id*. at 1333.  These steps, however, merely "'explain the basic concept' of processing information through a clearing-

house." *Id.* The fact that the asserted claims of the *Dealertrack* patent contained the limitation "computer aided" did not change this result, this Court held, because the patent is "silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method." *Id.* The Court thus concluded that the asserted claims of the *Dealer-track* patent are patent ineligible under Section 101. *Id.* at 1334-35.

Similarly, the *Mortgage Grader* patents described a system and method for enabling borrowers to shop for loan packages offered by multiple lenders. 2016 U.S. App. LEXIS 1115, at *2-3. The claims included the following steps: (1) storing of lending criteria and loan packages available from multiple lenders; (2) collecting personal loan evaluation information from potential borrowers; (3) grading and comparing the borrower data with lender criteria; and (4) making available to the borrower matching loan packages. *Id.* at *3. The *Mortgage Grader* patent described coordinating offers of credit between lenders and borrowers using generic computers. It claimed the abstract idea of anonymous loan shopping, *i.e.,* matching credit applicants with multiple lenders anonymously using generic computer components. *Id.* at *19-20. Its claimed steps, however, could all be performed by humans without a computer. *Id.*

LendingTree's claims describe a nearly identical process: receiving lending criteria and borrower information; comparing these two sets of information; identi-

fying matches; and presenting options to lenders based on this "filtering" process. And like the *Mortgage Grader* and *Dealertrack* claims, LendingTree's claims apply these concepts using only generic components such as the Internet and a website. They offer no particularized detail regarding how these components achieve the method. *See Dealertrack*, 674 F.3d at 1333. LendingTree's patents, like those in *Dealertrack* and *Mortgage Grader*, lack an inventive concept.

LendingTree attempts to distinguish its claims from *Mortgage Grader* on two grounds. First, it argues its claims are patentable because they use two computers operating over a network, rather than one computer with a database and two interfaces. LT Reply Br. at 60. But all of these claim elements are generic. Adding more or different generic elements does not make a patent eligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2352 (2014). Moreover, LendingTree's patents and the *Mortgage Grader* patents actually do both recite the use of a network and a database. A514 at 7:20; 2016 U.S. App. LEXIS 1115, at *3.

LendingTree next argues that its patents do not claim a process that humans can perform without the assistance of a computer. LT Reply Br. at 60. In particular, it argues that humans cannot perform the same functions that computers do in the claims. This mischaracterizes the mental steps test as requiring humans to be able to literally infringe the claims. In *Mortgage Grader*, a human could also not literally meet every claim limitation because the patents there also recited data-

bases and a computer system.  2016 U.S. App. LEXIS 1115, at *20.  But the Court still found a human could perform the steps of the method manually.  *Id.* at *19; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (idea abstract where humans traditionally performed it, even though patent required computer), *cert. denied*, 136 S. Ct. 119 (2015); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266 1275, 1279 (Fed. Cir. 2012) (humans can manually administer a life insurance policy even though claimed computer improved efficiency).  LendingTree's patents recite some steps using generic computers, but their object—the matching of borrowers and lenders—can be performed by humans and in fact has been performed for a century by brokers.[2]  *See* Zillow Br. at 71.  Lending Tree's claims cover implementing a fundamental economic practice using generic computer technology, just like the claims in *Dealertrack* and *Mortgage Grader*.  As this Court held in *Mortgage Grader*, "[b]ecause the asserted claims are directed to an abstract idea and nothing in the claims adds an inventive concept, the claims are not patent eligible under § 101."  2016 U.S. App. LEXIS 1115, at *20-21.

---

[2] LendingTree also attempts to distinguish *Dealertrack* on the basis that its claims require the interaction of multiple computers to create simultaneous competition. LT Reply Br. at 54.  As discussed below, LendingTree did not invent this "interaction."  As in *Dealertrack*, Lending Tree's patents are agnostic regarding how competition is achieved other than by using generic computers performing their basic functions.

**B.    The Claims Are Directed to an Abstract Idea.**

**1.    The LendingTree Patents Are Directed to the Abstract Idea of Comparing Credit Applications to Lending Criteria.**

LendingTree's claims are directed to the abstract idea of comparing credit applications to lending criteria.[3]  Although LendingTree formally disputes this, in substance the parties agree the claims are directed to this basic concept.  For example, LendingTree characterizes the inventions as computerizing "lead/loan coordination" or "generating leads related to credit applications."  LT Reply Br. 55, 59.  This restates the same idea of a credit application clearinghouse, which compares credit applications to lending criteria.  This idea is abstract because it is both a fundamental economic practice and something that humans can and do perform manually.

LendingTree does not put forth an alternative purpose for the claims.  Instead, it focuses on what it believes to be the purported innovation of its claims—allowing "simultaneous real-time" competition among lenders using multiple computers.[4]  *Id.* at 5, 14, 54-55.  But competition is an abstract idea that is a feature of

---

[3] LendingTree contends that because Zillow also refers to this idea as "a credit application clearinghouse," it shows the patents are not abstract.  LT Reply Br. at 52, 56.  But there is no distinction between these ideas:  a credit application clearinghouse performs the function of comparing credit applications to lending criteria. *See Dealertrack*, 674 F.3d at 1333.

[4] LendingTree argued below that the claims do not require competing offers from lenders.  A1250-51.  It contended instead that simultaneous competition includes "showing ratings, customer reviews, and providing rate quotes."  LT Reply Br. at 32-33.  Thus, according to LendingTree, "simultaneous competition" is a virtually

every market. The simultaneous competition described in the claims is just a result of using generic computing and networking equipment to implement the idea. *See Alice*, 134 S. Ct. at 2353, 2356 (computer implementation that resulted in simultaneous coordination considered in step two analysis and did not contribute to patent eligibility). Simply using computers operating alone or over a network does not render an abstract idea concrete or tangible. *Dealertrack*, 674 F.3d at 1332-33; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015). LendingTree does not show that its patents do anything more than automate the process of comparing credit applications to lending criteria—a naked idea and a task that mortgage brokers have manually performed for years.

The claims at issue in *Mortgage Grader* and *Dealertrack* each involved simultaneous competition. In *Mortgage Grader*, a borrower could simultaneously compare loan packages from different lenders for which he or she qualified. *Mortgage Grader*, 2016 U.S. App. LEXIS 1115, at *3-4 (claiming an "interface" that the borrower uses "to search the database to identify a set of loan packages for which the borrower qualifies . . . to compare the loan packages within the set"). In *Dealertrack*, the claim required "sending at least a portion of the credit application data, and the credit report data . . . to more than one of said remote funding source

unbounded concept that includes any customer-facing activity. This cannot be enough to render the claims concrete and tangible—to the contrary, it supports the view that simultaneous competition is itself an idea that can be implemented in any number of unrecited ways.

terminal device substantially at the same time." *Dealertrack*, 674 F.3d at 1319.[5]

The same simultaneous action by generic computers did not save the claims in these cases from Section 101 invalidity, and they cannot save LendingTree's claims here.

LendingTree elsewhere identifies incidental aspects of its claims such as collecting information via an electronic qualification form, collecting selection criteria from lending institutions, automatic culling of user information, and transmission of information of matched users to lending institutions, as evidence that its claims are not abstract. LT Reply Br. 52-55. These standard steps are incidental to the implementation of the abstract idea of matching borrowers or loan applications with lenders, and each can be performed by hand by a mortgage broker or a general purpose computer. These incidental steps do not make LendingTree's claims any less abstract. Moreover, these steps relate to the implementation of the abstract idea and are thus irrelevant to step one of the *Alice* test. *See Internet Patents v. Active Network, Inc.*, 790 F.3d 1343, 1346, 1348 (Fed. Cir. 2015); *see also Ultramercial*, 772 F.3d at 715. That the idea can be implemented through a series of routine

---

[5] Following this Court's opinions in *Dealertrack* and *Mortgage Grader*, the Patent Trial and Appeal Board found another electronic lending patent invalid. *E-Loan, Inc. v. IMX, Inc.*, No. CBM2015-00012, Paper No. 19, at 19-21 (P.T.A.B. Feb. 16, 2016) ("The challenged claims of the '947 patent recite methods and systems for processing loan applications that fall squarely within the realm of an abstract idea.").

steps does not render the idea any less abstract. *See Dealertrack*, 674 F.3d at 1333 (invalidating claim that included incidental steps for selectively forwarding data).

LendingTree seeks to liken its claims to those the Supreme Court found patent eligible in a pre-*Mayo/Alice* case, *Diehr*. LT Reply Br. at 52. That comparison fails. The claim in *Diehr* described an improvement to the process for curing rubber. *Diamond v. Diehr*, 450 U.S. 175 (1981). Achieving a proper cure depended on accounting for variables of thickness, temperature, and time in the press. *Id.* at 177-78. Accurate cures had been impossible because the temperature of the molding press could not be precisely measured—prior methods just estimated it, leading to inaccuracies. *Id.* The contribution of the *Diehr* patent was to constantly measure the actual temperature inside the mold and feed them into a computer repeatedly recalculating the cure time using the Arrhenius equation. *Id.* at 178.

The claim in *Diehr* did in fact describe a patent-ineligible mathematical formula, the Arrhenius equation. *Diehr*, 450 U.S. at 188. Nevertheless, the Court upheld the claim because it recited a sufficient inventive concept and did not preempt the formula itself.[6] *Id.* at 187. The Court upheld the *Diehr* patent not because a computer performed certain claim steps, but because it improved upon an existing process using a technological solution, specifically by constantly monitoring tem-

---

[6] As such, the Court did not uphold the patent in *Diehr* under step one—instead, it found the patent valid under what we now call step two. *Diehr* therefore does not help LendingTree show that its patents do not claim an abstraction, as the *Diehr* patents undoubtedly *did* include an abstract idea.

peratures within a mold and feeding this information into a computer in a manner that had never been done before.  *Alice*, 134 S. Ct. at 2358; *Diehr*, 450 U.S. at 178.  In other words, the claims were drawn to a particular improvement of a process.  LendingTree's patents, however, do not describe or claim any technological improvement and are agnostic as to the way its steps are performed.

The *Diehr* patent claimed a specific improvement to a technological process, but LendingTree's patents claim a longstanding economic practice, as in *Alice*, *Dealertrack*, and *Mortgage Grader*.  They do not claim any way of performing the methods identified in the specification.  They claim the idea.

> ### 2. Abstract Ideas Are Not Limited to Mathematical Formulas and Fundamental Economic Practices, and, in any Event, Comparing Credit Applications to Lending Criteria Is a Fundamental Economic Practice and Thus an Abstract Idea.

LendingTree also contends that abstract ideas are limited to mathematical formulas and fundamental economic practices.  LT Reply Br. at 51.  But the Supreme Court expressly declined to "delimit the precise contours of the 'abstract ideas' category."  *Alice*, 134 S. Ct. at 2357.  Following this guidance, this Court has held abstract numerous ideas that do not fit these narrow categories, including collecting data, recognizing certain data within the collected data set, and storing the recognized data in a memory, *Content Extraction*, 776 F.3d at 1347, retaining information in the navigation of online forms, *Internet Patents*, 790 F.3d at 1348, testing operators of moving equipment for physical or mental impairment, *Vehicle*

*Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, No. 2015-1411, 2015 U.S. App. LEXIS 22681, at *5-6 (Fed. Cir. Dec. 28, 2015), determining a price using organizational and product group hierarchies, *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015), and showing an advertisement before delivering free content, *Ultramercial*, 772 F.3d at 715. None of these ideas is confined to a mathematical algorithm or fundamental economic concept.

Even if LendingTree's view of the law were correct, however, its patents still claim an abstract idea—the fundamental economic practice of comparing credit applications to lending criteria. LendingTree does not dispute that mortgage brokers have historically compared loan applications against lender criteria and communicated offers to borrowers from matching lenders. Zillow Br. at 69-70 (citing A2714-716 at ¶¶ 18-24). The Court has already held this coordinating of borrowers and lenders to be a fundamental economic practice and an abstract idea. *Mortgage Grader*, 2016 U.S. App. LEXIS 1115, at *19, *24. That holding is consistent with past cases as well. *Alice*, 134 S. Ct. at 2356 (middleman coordinating a transaction is a fundamental economic practice); *Dealertrack*, 674 F.3d at 1333 (clearinghouse is a fundamental economic practice). Whether articulated as comparing credit applications to lending criteria, a credit application clearinghouse, or lead/loan coordination, the claims here are directed to an abstract idea.

### C.  The Claims Recite Generic Computing Elements that Provide No Inventive Concept.

In its step two analysis, LendingTree characterizes its claims as describing the use of multiple computers operating in a "specific manner" to produce simultaneous competition among lenders.  But LendingTree does not ground its argument in the actual claim language, describe the "specific manner" in the claims that achieves the result it identifies, or otherwise explain why this concept is inventive.

Claims that do not recite how a result may be accomplished do not provide an inventive concept.  *See Mortgage Grader*, 2016 U.S. App. LEXIS 1115, at *23; *Internet Patents*, 790 F.3d at 1348.  Here, the claims do not describe what specific method produces "real-time competition" or explain how the claim limitations make this result possible.  LendingTree suggests only that the result is achieved by coordinating multiple computers using inherently complex computer programming.  LT Reply Br. at 62.  But the patent is agnostic as to how the computers must be coordinated, and it does not contain any specific programming steps, complex or otherwise.  The claims do not provide even general guidance towards a way the program could perform the steps—they express no preference as to how the result is achieved.  This does not provide an inventive concept.  *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 701 (2015) (claims did not add inventive concept where specification indicated that any programming would suffice); *Dealertrack*, 674 F.3d at 1333 (no inventive con-

13

cept where patent described no specialized programming for the claimed hardware); *see also Versata*, 793 F.3d at 1335 ("these supposed benefits are not recited in the claims at issue").

LendingTree again relies on *Diehr* for the proposition that the purported "new timing step" of simultaneous competition is inherently inventive and argues that the *Diehr* claim's requirement to constantly measure temperature is like its patents' supposed "simultaneous competition" limitations. LT Reply Br. at 15, 59. But in *Diehr*, the Supreme Court focused not on a "timing step" but on the patent's claimed technological solution—use of a "'thermocouple' to record constant temperature measurements inside [a] rubber mold"—which "transformed the process into an inventive application of a [mathematical] formula" addressing a problem the industry had not been able to solve. *Alice*, 134 S. Ct. at 2358 (citation omitted). Indeed, the *Alice* Court distinguished *Diehr* on this basis and ultimately held the use of a computer to issue simultaneous instructions *not* inventive. *Id.* at 2358-59. Likewise, *Dealertrack* rejected a claim that involved sending credit application data simultaneously to multiple banks. 674 F.3d at 1329. And *Mortgage Grader* held invalid claims allowing a borrower to simultaneously compare available loan packages from multiple lenders. *Mortgage Grader*, 2016 U.S. App. LEXIS 1115, at *3-4. What distinguishes LendingTree's claims from the claimed improvement *Diehr*, and makes them like *Alice*, *Dealertrack*, and *Mortgage Grader* is that the

simultaneous competition results from simply automating the abstract idea using generic computers, and not from any inventive contribution of LendingTree. *OIP*, 788 F.3d at 1363 (automation of a fundamental economic concept is not inventive).

Finally, LendingTree asks the Court to defer to the district court's ruling on summary judgment, based on the district court's supposed consideration of facts in the trial record. LT Reply Br. at 57. But Section 101 eligibility is an issue of law that is reviewed de novo. *Mortgage Grader*, 2016 U.S. App. LEXIS 1115, at *22-24. Further, the district court did not identify any facts on which it based its decision—in fact, its order contained no explanation of the ruling at all. A16. Under these circumstances, the district court is entitled to no deference. *See, e.g.*, *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1276 (Fed. Cir. 2004) ("A district court must provide reasoning for its determination that a case is exceptional for us to provide meaningful review.") (citation omitted); *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005) (vacating district court's claim construction because it did "not supply the basis for its reasoning sufficient for a meaningful review").

LendingTree's patents do not improve the functioning of a computer or any other kind of technology or technological process. *Alice*, 134 S. Ct. at 2359; *see also Mortgage Grader*, 2016 U.S. App. LEXIS 1115, at *20. Instead, they use generic computers to automate the mortgage lending process to be "fast[er]" and

more "convenient" using the "speed of the Internet." A530 at 1:49, 56-57. Automating known techniques with generic computer equipment does not supply an inventive concept. LendingTree's patents are invalid as a matter of law.

### D.   The Claims Risk Preempting the Abstract Idea.

The Court need not consider preemption separately from the *Mayo*/*Alice* two-step framework. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). But should it choose to do so, it should conclude that LendingTree's patents impose an undue burden on innovation in the credit industry.

LendingTree argues that its claims survive Section 101 scrutiny because they do not preempt all means of comparing credit applications to lending criteria. LT Reply Br. at 59-61. But a patent may still pose an unreasonable risk of preempting an idea even if it does not cover every product in the field. *OIP*, 788 F.3d at 1362-63 ("[T]hat the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract."). Therefore, the fact that the LendingTree patents require multiple computers does not mean they do not present a preemption risk—any process performed over the Internet necessarily uses multiple computers. Nor does the fact that there may be alternative methods to compare credit applications to lending criteria. *Ariosa*, 788 F.3d at 1378-79 (finding preemption risk despite argument that patent did not preclude alternative methods).

16

The patents place anyone who electronically compares credit applications against lender criteria and forwards those applications to lenders at risk. *See* A533 at 7:25-38. As in past cases, LendingTree's patents "disproportionately [tie] up the use of the underlying idea" hindering future innovation because they implement it using only conventional components. *Alice*, 134 S. Ct. at 2354-5; *see also OIP*, 788 F.3d at 1362-63. LendingTree does not purport to have invented these components, and the claims offer no limitations on how to configure or use them. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). These ambiguities risk preempting future inventors seeking to electronically compare credit applications to lending criteria.

### E. LendingTree's Admissions Regarding *Ultramercial* Show that its Patents Claim Ineligible Subject Matter.

LendingTree admitted below that its claims parallel those in *Ultramercial* and asked the district court to treat them similarly. Zillow Br. 14-16, 75. On appeal, LendingTree argues only that the admissions do not preclude it from contending that its patents are not invalid under Section 101. LT Reply Br. 61-62. While that is correct, LendingTree failed to explain how its claims differ from those in *Ultramercial* in any way that would make them patent eligible. LendingTree's admissions that its patents claim at a "similar level of detail" to those in *Ultramercial*, and that their eligibility rests, not on anything disclosed in the claims, but on

17

"the inherent complexity of employing computers on the Internet," confirm that that they fail to claim patentable subject matter.  A3214.

## II.   THE COURT SHOULD DISREGARD LENDINGTREE'S ARGU-MENTS BASED ON EVIDENCE OUTSIDE OF THE RECORD.

LendingTree contends that the PTO's issuance of certificates of correction moots the inventorship issue on appeal, and therefore it requests that the Court vacate the district court's judgment of invalidity.[7]  LT Reply Br. at 44.  The Court should not do so for at least two reasons.  First, the Court should not consider the correction certificates or LendingTree's related arguments because the certificates are not in the record.  Second, even if the Court considers the correction certificates, it should still not vacate the district court's judgment of invalidity, as LendingTree sought and received correction of only one of the two defects supported by substantial evidence at trial.

### A.    LendingTree Improperly Relied on Material Outside the Record.

With its reply brief, LendingTree purported to add over 1,000 pages of extra-record materials to the joint appendix.  These consist of correction certificates for

---

[7] Fed. Cir. Rule 27(e) provides that "motions to strike . . . [are] prohibited as long as the party seeking to strike has the right to file a responsive brief in which the objection could be made."  Accordingly, Zillow objects herein to LendingTree's argument and its reliance on evidence that is not in the record of this appeal.  Although the rules limit Zillow's reply to issues presented by the cross-appeal (*see* Fed. R. App. P. 28.1(c)(4)), to avoid burdening the Court with a separate motion, and in accordance with the spirit of Rule 27(e), Zillow raises its objection here.

the asserted patents adding Bennett as a named inventor of the asserted patents and LendingTree's related submissions to the PTO.[8]  A13207-14641.

The district court did not consider this material, as the correction proceedings occurred after it entered final judgment of invalidity.  LendingTree did not file the correction certificates in the district court, did not request the Court take judicial notice of them, and did not move to supplement the record on appeal.  *See Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1374 & n.4 (Fed. Cir. 2015) (declining to take judicial notice *sua sponte* of P.T.A.B. orders issued during the pendency of the appeal where neither party formally requested it). Accordingly, the Court should not consider the certificate or related submissions as part of this appeal.  *Arlington Indus. Inc. v. Bridgeport Fittings, Inc.*, 759 F.3d 1333, 1340 (Fed. Cir. 2014) ("We normally cannot consider documents outside of the record on appeal."); *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 746 (Fed. Cir. 1987) (declining to consider patent file history that was not before the district court and striking related references in brief).  The Court should likewise disregard the argument in LendingTree's reply brief that relies on this extra-record evidence. *See* LT Reply Br. at 43-44; *Am. Standard*, 828 F.2d at 746.

---

[8] LendingTree referred to the Petition for Correction in its Opening Brief, but did not make any argument based on it other than to say that the petition was pending and the Court should resolve inventorship in the event the PTO did not act.  *See* LT Br. at 60, citing A12509-630.

### B. The Correction Certificates Do Not Moot the Inventorship Issue on Appeal Because They Correct Only One of Two Defects Supported by Substantial Evidence at Trial.

If the Court considers material outside the record, it should not disturb the jury's finding of invalidity for improper inventorship and the district court's judgment. As the district court found, substantial evidence supported a finding that Bennett was nonjoined, that Stiegler was misjoined, or both. A30-31; *see also* Zillow Br. at 23-24, 61-63, citing A10306 at 541:11-16; A10327 at 616:21-23; 618:18-23; A10342 at 679:10-12; A10328 at 623:3-13. LendingTree acknowledged these possibilities when it asked the district court to poll the jury regarding the identity of the proper inventors. A11323 at 4286:5-11.

However, before the PTO LendingTree only sought to correct one of these errors: the omission of Bennett. *See* A12512, A12523 (requesting the patent "insert -- ; James F. Bennett, Jr., Wellesley, MA (US) -- " on the first page of the patents). Based on the Petition and supporting declarations from Lebda, Bennett and the executor of Stiegler's estate indicating no objection to the change, the PTO issued certificates adding Bennett as an inventor. A13207-08. But this "correction" resolved only one basis for the jury's finding of improper inventorship.

LendingTree did not seek to correct the misjoinder of Stiegler, and nothing in the record of the correction proceedings indicates the PTO considered that issue. LendingTree contends that the PTO gave full consideration to the trial record. LT Reply Br. at 44 (stating "[t]he PTO was provided with the same information as the

20

district court and has corrected the inventorship of LendingTree's patents"). However, no evidence supports this suggestion. LendingTree submitted over 1,000 pages of documents related to the district court action with a cover letter that described the documents as "a supplement to the Petition" comprising "a court decision and briefs related to inventorship." A13210. LendingTree did not identify the misjoinder of Stiegler as an error requiring correction. Nor did it identify it as a disputed issue and request that the PTO independently assess it. Indeed, there is no indication that the PTO gave the misjoinder of Stiegler any consideration at all.

Thus, the PTO's correction does not moot the inventorship issue on appeal or necessarily correct the defect in inventorship underlying the jury's general verdict. The Court should therefore not disturb the jury's verdict of improper inventorship or the district court's judgment.

## CONCLUSION

This Court should reverse the district court's denial of summary judgment for invalidity under Section 101. The Court should also disregard LendingTree's arguments based on evidence outside of the record and deny LendingTree's request to vacate the jury's verdict of improper inventorship and the district court's judgment.

Dated:  February 18, 2016                     Respectfully submitted,

                                              */s/ J. David Hadden*
                                              J. David Hadden
                                              Saina S. Shamilov
                                              Todd R. Gregorian
                                              Ravi Ranganath
                                              FENWICK & WEST LLP
                                              801 California Street
                                              Mountain View, CA  94041
                                              Telephone: (650) 988-8500

                                              *Attorneys for Defendant-Cross-Appellant*
                                              *Zillow, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing **REPLY BRIEF OF DEFEND-ANT-CROSS APPELLANT ZILLOW, INC.** to be filed with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system this February 18, 2016, and that a copy was served on counsel of record by the CM/ECF system and by electronic mail to the parties on the service list below.

| | |
|---|---|
| Stephen S. Korniczky<br>skorniczky@sheppardmullin.com<br>Sheppard, Mullin, Richter & Hampton LLP<br>12275 El Camino Real, Suite 200<br>San Diego, CA 92130 | Martin Bader, Esq.<br>mbader@sheppardmullin.com<br>Sheppard, Mullin, Richter & Hampton LLP<br>12275 El Camino Real, Suite 200<br>San Diego, CA 92130 |
| Edward V. Anderson<br>evanderson@sheppardmullin.com<br>Sheppard Mullin Richter & Hampton LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301 | Michael Murphy<br>mmurphy@sheppardmullin.com<br>Sheppard, Mullin, Richter & Hampton LLP<br>12275 El Camino Real, Suite 200<br>San Diego, CA 92130 |

Dated:  February 18, 2016        */s/ J. David Hadden*
                                                      J. David Hadden

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(b).  This brief contains 5,153 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief uses a proportionally spaced typeface using Microsoft Word and 14 point Times New Roman font.


Dated:  February 18, 2016                Respectfully submitted,

                                                  */s/ J. David Hadden*
                                                  J. David Hadden
                                                  Saina S. Shamilov
                                                  Todd R. Gregorian
                                                  Ravi Ranganath
                                                  FENWICK & WEST LLP
                                                  801 California Street
                                                  Mountain View, CA  94041
                                                  Telephone: (650) 988-8500

                                                  *Attorneys for Defendant-Cross-Appellant*
                                                  *Zillow, Inc.*